LEHRKIND, APPELLANT, v. McDONNELL, RESPONDENT.

(No. 3,563.)

(Submitted September 22, 1915.  Decided October 28, 1915.)

[153 Pac. 1012.]

*Contracts — Action for Breach — Counterclaim — Sufficiency — Offer to Perform—Rejection—Effect—Cross-examination— Market Value—Evidence—Verdicts—Construction.*

Contracts—Breach—Counterclaim—Demurrer.

1.  In an action to recover damages for breach of an executory contract to buy and sell a certain number of bushels of barley, demurrer to the answer which, though admitting that delivery of the barley was not made, charged that the defendant offered to make delivery of the kind and quality of barley described in the contract but that plaintiff refused to accept it, and asking judgment for damages sustained by him, was properly overruled.

Same—Offer to Perform—Rejection—Effect.

2.  An unconditional offer in good faith to perform made by the party upon whom the obligation rests, coupled with the ability to perform, is equivalent to full performance, and extinguishes the obligation as to the party making the offer, and, a wrongful refusal to accept it disables the other party from claiming any benefit.

[As to when prevention of performance gives right to recover on contract, see note in 59 Am. St. Rep. 283.]

Same—Counterclaim—Sufficiency.

3.  An offer to perform having been wrongfully rejected by plaintiff, defendant could rightfully set up a counterclaim for the difference between the contract price and the value of the barley to him, together with the excess of expenses, properly incurred in carrying it to market, over those which would have been incurred if plaintiff had accepted it, without alleging that he had elected to avail himself of either option given him under section 6059, Revised Codes.

Same—Cross-examination.

4.  Where the circumstances attending a sale of grain had been related by plaintiff's agent and a sample thereof introduced in connection with his evidence and identified as the sample left with his principal by defendant, questions tending to show that the sale had been made by sample and that in reducing the contract to writing the plaintiff had inserted in it a description of the grain instead of a statement that it was to be of the same quality as the sample, were not improper on cross-examination.

Same—Market Value—Evidence.

5.  Where an expert witness had first testified as to the market price of barley of the same quality as that shown him by defendant before the contract sued on was made, admission of his subsequent statement that he had made defendant an offer for the barley exhibited by him at the price stated was not error.

Same—Interpretation—Technical Terms—Jury Question.

6.  Necessity for the interpretation of a contract arises only when expressions and terms are therein used which are of doubtful import,

such, for instance, as have a technical meaning, and not when they are clear and unambiguous; and when different inferences may legitimately be drawn from the evidence presented on the question, it is the province of the jury to draw the proper one.

Verdicts—Interpretation.

7. A verdict must not be technically construed, but must be given such a construction as will carry out the obvious intention of the jury; in arriving at such intention reference may be had to the issues made by the pleadings, the instructions to the jury, and the evidence introduced.

Same.

8. *Held*, under the rule *supra*, that a verdict which found the issues generally for plaintiff but fixed an award in his favor in an amount inconsistent with such finding, nevertheless was supported by the record.

[As to rights to recover profits as damages for breach of contract when profits are the very object of the contract, see note in Ann. Cas. 1914D, 36.]

*Appeal from District Court, Gallatin County; B. B. Law, Judge.*

ACTION by Julius Lehrkind against Ed. McDonnell. Judgment for plaintiff, from which, as well as from an order denying his motion for a new trial, he appeals. Affirmed.

*Mr. John A. Luce,* for Appellant, submitted a brief and argued the cause orally.

Relief will not be afforded on the ground of mistake where defendant's liability or other trouble is the result of his want of proper diligence, and usually only in the case of fraud. (*Grymes v. Sanders,* 93 U. S. 55, 23 L. Ed. 798; *Hawkins* v. *Hawkins,* 50 Cal. 558; *Mitchell* v. *Holman,* 30 Or. 280, 47 Pac. 616; *Robertson* v. *Smith,* 11 Tex. 211, 60 Am. Dec. 234.) It has been held that one who signs a written instrument in ignorance of its contents is presumptively guilty of gross negligence, and the burden of proof rests upon him to rebut the presumption. (*Albrecht* v. *Milwaukee & S. R. Co.,* 87 Wis. 105, 41 Am. St. Rep. 30, 58 N. W. 72.)

There is no allegation in the answer, and no evidence that defendant delivered or offered to deliver any cleaned two-rowed Chevalier barley which was good brewing barley under the contract. It was necessary for him to deliver or tender the full

amount and of the exact kind and quality contracted for. (*Stotesbury* v. *Power*, 27 Mont. 469, 71 Pac. 675; *Mette & Kanne Distilling Co.* v. *Lowrey*, 39 Mont. 124, 101 Pac. 966; 2 Schouler on Personal Property, sec. 396.)   In 35 Cyc. 169, it is said: "The tender must be of goods of the proper quantity and quality; if the goods tendered do not answer the description, there is a breach of warranty." (*Munford* v. *Kevil*, 109 Ky. 246, 58 S. W. 703; 35 Cyc. 216; *Barrie* v. *King*, 105 Ill. App. 426.) The rule is, that when goods are sold, not only by sample but by description as well, there is a warranty that they shall correspond to both the description and the sample, and it is not a sufficient compliance with the contract that the bulk of the goods correspond with the sample.   There is a breach of the contract if they fail to meet the description. (*Miamisburg Twine etc. Co.* v. *Wohlhuter*, 71 Minn. 484, 74 N. W. 175; *Wood* v. *Michaud*, 63 Minn. 478, 65 N. W. 963; *Morse* v. *Moore*, 83 Me. 473, 23 Am. St. Rep. 783, 13 L. R. A. 224, 22 Atl. 362; *Miller* v. *Moore*, 83 Ga. 684, 20 Am. St. Rep. 329, 6 L. R. A. 374, 10 S. E. 360.)

The case of *Gould* v. *Stein*, 149 Mass. 570, 14 Am. St. Rep. 455, 5 L. R. A. 213, 22 N. E. 47, is on all-fours with this case, if the contract had been reformed to express what is claimed by defendant.   And it was there held that in such a contract, the descriptive words were not to be treated merely as words of general commendation, but as words having specific significance. To apply the doctrine of *Gould* v. *Stein* to this case, if the contract were as claimed by the defendant, it would be necessary for him to have furnished barley not only as good as the sample, but, in any event, good brewing barley, and that the same should be cleaned. (*Northwestern Cordage Co.* v. *Rice*, 5 N. D. 432, 57 Am. St. Rep. 563, 67 N. W. 298; see, also, 30 Am. & Eng. Ency. of Law (2d ed.), 153.)   A case very similar to the case at bar is the case of *Weston* v. *Barnicoat*, 175 Mass. 454, 49 L. R. A. 612, 56 N. E. 619; see, also, *Meyer* v. *Everth*, 4 Camp. 22, 15 Rev. Rep. 722; *Tye* v. *Finmore*, 3 Camp. 462, 14 Rev. Rep.

809; *Imperial Portrait Co.* v. *Bryan,* 111 Ga. 99, 36 S. E. 291; *Walter A. Wood Harvester Co.* v. *Ramberg,* 60 Minn. 219, 61 N. W. 1132. Under a sale by description the goods must not only answer the description in fact, but must be salable and merchantable under that description. (*Union Selling Co.* v. *Jones,* 128 Fed. 672; 30 Am. & Eng. Ency. of Law (2d ed.), 153, 154; *Harrison* v. *McCormick,* 89 Cal. 327, 23 Am. St. Rep. 469, 26 Pac. 830.)

The presumption is that the verdict is as broad as the issue submitted, and that all the issues are found in favor of the prevailing party. (22 Ency. Pl. & Pr. 872; *White* v. *Simonds,* 33 Vt. 178, 78 Am. Dec. 620.) It has been held that where the verdict of the jury is larger or smaller than what is admitted to be due, it is a matter of law for the court to fix the amount (22 Ency. Pl. & Pr. 915), and that where there is a finding for a party and the evidence is such that the court should have directed the verdict, it may adjust the equities between the parties. (23 Cyc. 821; *Smith* v. *Smith,* 23 Tex. Civ. 304, 55 S. W. 541.) And the court is justified in assuming a fact admitted by the pleadings. (*Blakeley* v. *El Paso Building etc. Assn.* (Tex. Civ.), 26 S. W. 292.)

*Mr. Geo. D. Pease,* for Respondent, submitted a brief and argued the cause orally.

Equity will "make the legal effect of the instrument correspond to the express intention of the parties as disclosed in the negotiations." (*Stelpflug* v. *Wolfe,* 127 Iowa, 192, 102 N. W. 1130; *Story* v. *Gammell,* 68 Neb. 709, 94 N. W. 982; *Jones* v. *Price* (Iowa), 86 N. W. 219; *Waterman* v. *Dutton,* 6 Wis. 265.) And in such a case as this, the defendants need not apply for a revision or reformation, but may, under section 5029, Revised Codes, set up the facts in their answer, and the erroneous part of the contract will be disregarded. (*Lassing* v. *James,* 107 Cal. 348, 40 Pac. 534; Pomeroy's Equity Jurisprudence (3d ed.), sec. 868.) Under the provisions of the Code, the contract really

agreed upon is regarded as the only contract between the parties, and this is to be interpreted according to their real intentions as shown by the evidence of the parties. (*Gardner* v. *California Guarantee Inv. Co.,* 137 Cal. 71, 69 Pac. 844.)

The contract here having been drawn up by Henry Lehrkind, the agent of the appellant, the terms and expressions employed are his, and if any uncertainty remains in them, after applying the ordinary rules of construction, these terms and expressions must be construed most strongly against the appellant. (Rev. Codes, sec. 5043; *Bickford* v. *Kirwin,* 30 Mont. 1, 75 Pac. 518; *Blankenship* v. *Decker,* 34 Mont. 292, 85 Pac. 1035; *Lyon* v. *Dailey Copper Mining etc. Co.,* 46 Mont. 108, 121, 126 Pac. 931.)

The following authorities support the contention of the defendant and respondent in this case to show by oral evidence the meaning of the terms "good brewing barley" as understood by the parties to the contract, such term being capable of being used to convey various meanings: 3 Jones on Evidence, secs. 437, 441; *Boorman* v. *Jenkins,* 12 Wend. (N. Y.) 566, 27 Am. Dec. 158; *Buford* v. *Lonergan,* 6 Utah, 301, 22 Pac. 164; *Martin* v. *Brown,* 91 Iowa, 574, 60 N. W. 182; 35 Cyc. 123, 124.

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Plaintiff brought this action to recover damages for an alleged breach of the following contract:

"Bozeman Brewery.

"Julius Lehrkind, Proprietor.    Established 1895.

"Bozeman, Mont., Nov. 12, 1912.

"This agreement, made and entered into by and between Julius Lehrkind, party of the first part, and Ed McDonnell, party of the second part, provides: That the party of the first part hereby agrees to purchase from the party of the second part his crop of good brewing barley 2 Rowed Chevalier amounting to 2500 bushels at the price of $1.07½ per hundred pounds, cleaned, delivered at the Bozeman Brewery, delivery at option

party 1st part on or about Mch. 1, 13. And the party of the second part hereby agrees to sell the above barley as stipulated.

"ED. McDONNELL,

"JULIUS LEHRKIND,

"By HY. LEHRKIND.

"Paid $500.00."

It is alleged in the complaint, in substance, that at the time the contract was entered into, the plaintiff paid to the defendant, as a part of the purchase price stipulated for therein, the sum of $500; that he was ready and willing to make payment upon delivery of barley of the quality and amount necessary to meet the requirements of the contract; that defendant failed and refused to make delivery; that though upon his failure in this behalf plaintiff demanded the return of the cash payment, the defendant refused and has ever since refused to return it; that the plaintiff bought the barley for the purpose of converting it into malt to be sold, which fact defendant knew; that if delivery had been made as defendant agreed, plaintiff would have made a profit of twenty cents per bushel; that by reason of defendant's default he has suffered damage in the sum of $500, the cash payment, with interest from the date at which it was paid, and $500 in the loss of profits. Judgment is demanded for these sums. In his answer defendant admits the execution of the contract and that he refused to return the cash payment; he admits that delivery of the barley was not made, but alleges that he offered to make delivery of barley of the kind and quality described in the contract but that plaintiff refused to accept it. He denies all the other allegations of the complaint. By way of counterclaim he alleges that the sale was made to plaintiff by sample which defendant had at the time the contract was made and exhibited to the plaintiff; that the sample fairly represented the quality of the bulk of the 2,500 bushels; that it was understood by plaintiff and defendant that the expression, "good brewing barley," as used in the contract, meant barley of the same quality as the sample, and that by mutual mistake of plaintiff and defendant in reducing the contract to

writing, they omitted to state that the sale was by sample; that
in accordance with the agreement the defendant offered to make
delivery, and before the first day of March, 1913, tendered de-
livery of 11,805 pounds at plaintiff's brewery, but that plaintiff
refused to accept it; that he then and thereafter refused to accept
delivery of any amount, though defendant was ready and willing
to make delivery and offered to do so then and at different times
thereafter; and that after the contract was made, the market
price of barley declined so that defendant was compelled to sell
to other parties at 80 cents per hundred pounds, this being the
best price obtainable, and thus to suffer a loss of 27½ per hun-
dred, or $343.75.    Tendering and paying to the clerk the sum
of $175.00, as the balance due plaintiff of the $500 cash payment,
after deducting the amount of his damages with interest and
costs expended in the action, he demands judgment in his favor.
There was issue by reply.    At the trial the jury returned the
following verdict: "We, the jury in the above-entitled case,
find the issues in favor of the plaintiff and assess his damages at
$205.50/100 dollars."    Thereupon counsel moved for judgment
for the plaintiff for the sum of $500, the amount of the cash
payment, in addition to the amount found by the jury.    The
court denied the motion and ordered judgment for the latter
amount only, and for costs.    Plaintiff has appealed from the
judgment and order denying his motion for a new trial.

1. It is contended that the court erred in overruling plaintiff's
[1]   demurrer to defendant's answer.    It is said that the denials
of the answer are not sufficient to raise an issue, and that it
does not state facts sufficient to constitute a counterclaim.    The
contention is without merit.    It is true the answer admits the
execution of the contract, but it distinctly tenders issue upon the
allegation that defendant defaulted by a failure to deliver
barley according to its terms, and alleges that he did not do this
because of the refusal of plaintiff to accept delivery.    This put
the burden of proof upon the plaintiff, without regard to the
general denial.    If the defendant had not breached the contract
in this particular, the plaintiff had no cause of action.

An unconditional offer in good faith to perform, by the party [2] upon whom the obligation rests, coupled with the ability to perform, if rejected by the other party, is equivalent to full performance and extinguishes the obligation as to the party making the offer. (Rev. Codes, secs. 4929, 4937, 4938, 4939.) The offerer is then entitled to all the benefits to which he would have been entitled if performance had been complete on both sides. (Rev. Codes, sec. 4951.) A wrongful refusal to accept the offer disables the other party from claiming any benefit. The theory upon which the action was brought and tried was that the contract is an executory contract to sell and buy. (Rev. Codes, sec. 5084.) Accepting this as the correct theory, the title [3] to the barley did not pass to plaintiff. Upon the assumption that defendant's offer was wrongfully rejected and that no payment had been made, he had the option to abandon the contract, and, after selling the barley pursuant to section 5803, Revised Codes, to sue the plaintiff for the difference between the contract price and the net proceeds of the sale. (Rev. Codes, sec. 6059.) As an alternative he could sue for the difference between the contract price and the value of the barley to him, together with the excess of the expenses properly incurred in carrying it to market, over those which would have been incurred for the carriage thereof if the plaintiff had accepted it. (Rev. Codes, sec. 6059, *supra.*) He chose the second alternative; and while, in formulating his counterclaim his counsel assumed that he was not entitled to retain the whole of the advance payment, counsel also assumed that he was entitled to retain so much of it as would compensate him for the loss he suffered by a decline in the market price of the same quality of barley after the contract was made. Without regard, therefore, to the question whether the counterclaim states a case of mutual mistake, it states sufficient to warrant the relief demanded. It cannot be controverted that if the defendant offered to perform the contract according to its terms and was prevented from doing so by the action of plaintiff, he was entitled to be reimbursed by the plaintiff for all the loss suffered by him. It was not necessary

to allege that he had elected to avail himself of either option given him under section 6059, *supra,* except so far as it was incidentally necessary to show how and in what amount he was damaged.

2. Counsel for plaintiff has assigned error upon several rulings of the court in admitting and excluding evidence. We have examined them all but fail to find that there was prejudicial [4] error in any of them. For example: The contract was made with Henry Lehrkind on behalf of the plaintiff, after both had examined and approved a sample of barley exhibited to them by defendant at plaintiff's brewery at Bozeman. This sample was left at the brewery. A sample was introduced in evidence in connection with Henry Lehrkind's testimony and identified by him and other witnesses as the one left by defendant. The circumstances showing the negotiations were related by him in detail. On cross-examination the court, over objection of plaintiff, permitted him to be questioned somewhat at length by counsel for the defendant, the purpose being to secure from him an admission that the sale had been made by the plaintiff by sample, and that in writing the contract he had inserted in it a description of the barley instead of a statement that it was to be of the same quality as the sample. Walter Lehrkind, another agent of the plaintiff who took part in the transaction, was questioned for the same purpose. It is contended that this was prejudicial error for the reason that the defendant's counterclaim does not plead a case of mutual mistake. Whether the pleading justified the admission of evidence tending to show mistake or not it is not necessary to inquire. The evidence brought out did not tend to show a mistake. The only result of the inquiry was to bring out more fully the negotiations. The question whether a mistake had been made was not agitated thereafter during the trial. No testimony was introduced by the defendant upon the subject, nor did any of the instructions submitted refer to it. The cross-examination did not go beyond the limits of propriety, for whatever the purpose of counsel was, it related to matters which plaintiff stated in his

examination-in-chief. As will be pointed out later, the evidence
was competent for the purpose of aiding the court and the jury
in ascertaining what was the purport of the expression, "good
brewing barley," as understood by the parties, when they em-
ployed it in their written engagement.

Before the contract was made, the defendant exhibited to
[5] various grain dealers at Bozeman the sample which he left
with the plaintiff. Among these was the witness Brandenburg.
Upon being questioned as to what barley of the same quality was
worth in November, 1912, he stated that the market price was
from $1 to $1.05 per hundred-weight. He was then permitted,
over objection, to state that he made defendant an offer for it at
$1.05. If this had been the only statement made by the witness, its
admission would have been error (*Yellowstone Park R. R. Co.* v.
*Bridger Coal Co.*, 34 Mont. 545, 115 Am. St. Rep. 546, 9 Ann.
Cas. 470, 87 Pac. 963), but following, as it did, the statement
of the witness as to what was the market price, it could not have
been prejudicial because it meant nothing more than a statement
that the witness was willing to pay what he knew to be the
market price.

3. It is strenuously insisted that the court erred in refusing
to direct a verdict for the plaintiff, on the ground that the an-
swer does not state a defense or counterclaim, and that there
was no evidence tending to show that the defendant ever offered
to deliver any good brewing barley, as described in the contract.
We have already disposed of the contention as to the insufficiency
of the answer. The argument upon the other ground of the
motion proceeds upon the assumption that, inasmuch as plain-
tiff's evidence tended to show that the barley which the defend-
ant offered to deliver was not of the best quality for malting
and brewing purposes, the conclusion must follow, as a matter
[6] of law, that the defendant had breached the contract. If
the terms of the contract were all clear and unambiguous, the
assumption would be correct; for when the parties have so ex-
pressed themselves, the contract is not subject to interpretation.
Their intention is to be ascertained from the writing alone

(Rev. Codes, sec. 5028; *Butte Water Co.* v. *City of Butte,* 48 Mont. 386, 138 Pac. 195; *Frank* v. *Butte & Boulder Mining & L. Co.,* 48 Mont. 83, 135 Pac. 904); but when it contains terms or expressions which are of doubtful import, the necessity for interpretation arises. It is then incumbent upon the court to ascertain, by resort to proof of the attendant circumstances, as to what the mutual intention of the parties was at the time it was made. (Rev. Codes, secs. 5036, 7877.) And when different inferences may legitimately be drawn from the evidence in this behalf, it is the province of the jury to draw the proper one. The expression, "good brewing barley," as used in the contract, is of doubtful import. When one reads the contract for the purpose of ascertaining its meaning, he is confronted at once with the inquiry as to whether the parties mutually intended to use the expression in a technical or in a different sense. Technical words are to be interpreted as usually understood by persons in the profession or business to which they relate, unless clearly used in a different sense (Rev. Codes, sec. 5034); but a court cannot usually ascertain from the writing alone whether such an expression has a technical meaning, and, if so, what that meaning is, for it cannot take judicial notice of such matters. Nor may it take judicial notice that the parties intended to use it in that sense. Here a clear issue was presented as to the mutual intention of the parties in the use of the expression in question, and it was competent for the court to admit, as it did, evidence showing the circumstances under which the parties conducted and concluded their negotiations,—not to contradict, enlarge or vary the terms of the written instrument, but to enable the jury to ascertain the mutual intention of the parties, and hence whether the plaintiff or the defendant was guilty of a breach of the contract. The evidence did not leave any doubt that among brewers and malsters the expression, "good brewing barley," means barley of the best quality. It also showed, however, without dispute, as is alleged in the answer, that the plaintiff agreed to purchase defendant's crop after inspecting a sample exhibited to him by the defendant and left with him, upon condition that

the 2,500 bushels would be of the same quality as the sample, and that the contract was thereupon executed in duplicate, after it had been prepared by Henry Lehrkind, plaintiff's agent. It also appeared without dispute that a short time after the contract was executed, Walter Lehrkind went out to the farm of the defendant and inspected and sampled the crop of barley in defendant's granary, and that he did not then claim that it was not good brewing barley as represented by the sample. His only statement at that time was that it was not quite as good as he had expected. It further appears, without serious dispute, that the defendant was not notified that plaintiff would not accept delivery of the barley, until he brought to the brewery and offered to deliver the 11,805 pounds, when he was told that plaintiff would not accept that or any further delivery. There is a direct conflict as to the reason assigned for the refusal to accept, the plaintiff asserting that he refused because upon examination he found the barley was not of as good quality as the sample, inasmuch as it showed evidence of frost and was therefore unfit for malting; and the defendant asserting that plaintiff did not assign any reason but merely refused to accept. The main controversy was upon the question whether the crop, as a whole, was fairly represented by the sample and whether it was fit for malting purposes. The defendant contradicted the statement of the plaintiff and his witnesses that the sample identified by Henry Lehrkind was the one left with plaintiff at the brewery. Several witnesses who had seen defendant's sample corroborated the defendant on this point, and also in his statement that a sample which he exhibited to the jury was the same in quality and appearance as the one left with plaintiff. On these points the evidence was in hopeless conflict. It was conceded on both sides that "good brewing barley," as this expression is understood by brewers, was so scarce by reason of an early frost in Gallatin county, that very little was obtainable in the market at Bozeman. There was evidence tending to show that such barley as that offered by the defendant could be and was used for malting purposes. Besides this, there is some basis

in the evidence for the inference that the plaintiff refused to accept delivery, not because the crop was not equal in quality to the sample exhibited to and left with him, but because he had concluded that he could not make profitable use of that quality of barley. The evidence properly presented a question for the jury, under the instructions, as to whether the parties used the expression in its technical sense or to mean barley of the quality represented by the sample.

4. Finally, it is contended that the court erred in denying plaintiff's motion for judgment upon the verdict for the full [7] amount of the cash payment, in addition to the amount found by the jury. Counsel insists that, since it appears from the verdict that the jury resolved all the issues in favor of the plaintiff, he was entitled to judgment for the amount of the cash payment. This contention involves some difficulty. Looking at the verdict alone, one would conclude that the jury purposed to find for the plaintiff on all the issues, but inadvertently omitted to fix correctly the amount they must have intended to award him. It was said by this court in *Consolidated Gold etc. Min. Co.* v. *Struthers,* 41 Mont. 565, 111 Pac. 152: "A verdict is not to be technically construed, but is to be given such a reasonable construction as will carry out the obvious intention of the jury. In arriving at this intention, reference may be had to the issues made by the pleadings, the instructions submitted by the court, and the evidence introduced at the trial; and if by a fair and reasonable construction of it, in view of the whole record, the intention of the jury is manifest, it should be allowed [8] to stand." The verdict in this case, standing alone, is ambiguous, in that it finds the issues generally for the plaintiff and fixes the award to him in an amount inconsistent with the general finding. When we examine the evidence and the instructions, however, we are justified in concluding that the purpose of the jury was to award to the plaintiff, out of the cash payment, only a sum in excess of the amount tendered to the plaintiff because they did not think defendant damaged in the amount claimed, and otherwise to find for the defendant. They were

definitely instructed that if they found the defendant at fault, they should award to plaintiff the amount of the cash payment in full, and, in addition thereto, such damages in the way of lost profits as the evidence showed he had suffered. Evidently, if the intention had been to find for the plaintiff on all the issues, the jury would have followed this explicit instruction. There is no presumption, however, that they deliberately disregarded it; on the contrary, the fact that they made the award as they did raises a strong presumption that they thought this to be the full amount to which the plaintiff was entitled. inadvertently couching their verdict in terms not accurately expressing their conclusion. The evidence justifies this view, because it preponderates in favor of the defendant upon the issue as to what the understanding of the parties really was, and therefore upon the issue as to who violated the contract. The trial judge should have ordered the jury to reform the verdict so that there would be no doubt left as to their meaning. That he did not do so is no reason why he should not have construed it in the light of the record to ascertain the intention of the jury and render judgment accordingly.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SANNER and MR. JUSTICE HOLLOWAY concur.

Rehearing denied December 18, 1915.