EVANKOVICH, RESPONDENT, *v.* HOWARD PIERCE, INC., APPELLANT.

(No. 6,872.)

(Submitted January 12, 1932. Decided February 4, 1932.)

[8 Pac. (2d) 653.]

*Mr. J. A. Poore,* for Appellant.

No appearance in behalf of Respondent.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Howard Pierce, Inc., defendant, has appealed from a judgment in favor of the plaintiff, Marco Evankovich, in a suit brought for the dual purpose of having a contract for the purchase of a "used car" reformed, and for damages for the alleged breach of the contract.

The testimony on behalf of the plaintiff, believed by the court and jury, is to the following effect: Evankovich, who can neither read nor write the English language and understands it but imperfectly, owned a Chevrolet touring car which

was too small for the accommodation of his large family, and, on April 5, 1927, agreed with a salesman of the defendant company on a trade of the small car for a "used" Chandler. The salesman placed the value of the Chandler at $750, and that of the Chevrolet at $225, and demanded an additional down payment of $75. The values placed on the two cars were satisfactory to plaintiff, but he was unable to make the additional down payment at the time, and the salesman then agreed to place the Chandler on blocks and hold it for plaintiff until he should be able to raise the $75, at which time the car would be delivered to plaintiff and a conditional sales contract drawn providing for the payment of the balance due at the rate of $30 per month, but demanded immediate delivery of the Chevrolet.

Pursuant to agreement the plaintiff sent his fourteen year old boy to the defendant's used-car market with the Chevrolet, and, on his arrival and the delivery of the Chevrolet, defendant required the boy to sign his father's name to a "paper" and gave him a copy for delivery to his father. This paper is a contract in the form of an order for a car for future delivery, drawn by the vice-president of the defendant on an inappropriate form used for new cars, and recites: "Total price of car as is $750. Trade in allowance on Chev. Touring, $225. By cash payment monthly for 18 mo., $30 per month, $540. By cash to be paid when ~~you notify me car is ready for delivery~~ $75.00. Said motor vehicle to be delivered * * * on or about 5/1/27, or as soon thereafter as practicable, subject to delays. * * * ". It then provides: "Title to and right to possession of said property to remain in your possession until balance of purchase price is fully paid; and in the event you are willing to deliver same to me prior to complete payment of the purchase price, sale and delivery to be made up on such terms as you may prescribe. * * * Should I fail for any reason to comply with the above terms, or make default herein, prior to the time of delivery * * * I agree that you shall retain all moneys

paid * * * up to the amount of your commission upon the sale. * * * "

The manner in which the contract is drawn does not necessarily indicate that the $75 was to be paid on May 1. It merely recites: "By cash to be paid when, $75.00." The next independent sentence provides for the delivery of the car on May 1 "or as soon thereafter as practicable." Had defendant intended to express the agreement that the $75 must be paid on delivery, it should have stricken the word "when," inserted the word "on," and left the word "delivery" in the sentence in the order blank from which it struck the provisions as to time of payment.

The Chandler car was placed on blocks, which would seem to have been unnecessary if it was to be delivered within thirty days. Having heard nothing further from the plaintiff, the defendant sold the Chandler car on February 13, 1928, for $350, and at some time it sold the Chevrolet for $50. Thereafter plaintiff appeared to claim the car by the payment of the $75, when he was told that the car had been sold, but that his credit of $225 stood. Later plaintiff saw defendant's advertisement of an Essex car for sale at $385 and went to inspect it; he decided that he would take it, but was then told that the price to him was the full sum of $385, as his credit was "dead."

Plaintiff first brought action against defendant on the theory that the order was a binding contract, but was modified by oral agreement to permit him to pay the $75 and take the car at his convenience; this action resulted in judgment for defendant. Plaintiff then instituted this action by the filing of his complaint, which alleges the facts as above recited, and that "through a mistake of the said agent of the defendant and of the son of plaintiff" the contract as drawn did not contain all of the terms of the agreement between the parties, and, among other things, "did not recite that the sum of $75 was not due or payable until such time as the said plaintiff could procure said sum and * * * that the balance sum of $30.00 to be paid each month was not due and payable until

one month after the plaintiff had paid the said sum of $75.00 on said automobile." The complaint then alleges that plaintiff has "performed all the terms, conditions and covenants" to date, and is ready, willing, and able to perform the contract in full, but that defendant breached the contract. The prayer of the complaint was merely for judgment for the credit of $225, with interest.

The defendant interposed a general and special demurrer to the complaint, which was overruled, and then joined issue by answer.

At the opening of the trial, counsel for defendant demanded that counsel for plaintiff advise the court as to the nature of the action, whereupon counsel for plaintiff asked leave to amend the prayer of the complaint to read: "Wherefore plaintiff prays that the said contract be * * * reformed to conform to the true intents and purposes of the parties; that the plaintiff do have and recover damages for the breach thereof * * * in the sum of $225, together with interest, * * * " and then stated: "I think the matter is clear; it is an action for reformation of the contract and damages for its breach." Defendant then objected to the introduction of any testimony on the ground that the complaint does not state facts sufficient to constitute a cause of action, which objection was overruled.

Although an equity case, the court called a jury which at the close of the trial returned a general verdict for the plaintiff "upon all the issues in the case," and, in answer to two special interrogatories, found that the Chandler car was to be delivered to plaintiff "when he paid the seventy-five dollars," which payment was to be made "at the plaintiff's convenience." Over the objection of defendant the findings of the jury were adopted by the court, and additional findings in conformity with the allegations of the complaint and plaintiff's testimony were made.

Defendant contends that the complaint does not state a cause of action; that the evidence is insufficient to support the judgment, and that the judgment is against law.

The allegations of the complaint are sufficient on the subject ▮▮ of reformation of the contract, and, in order to determine whether or not the complaint states a cause of action for the breach of the reformed contract, it becomes necessary to determine the sufficiency of the evidence to warrant the reformation of the contract.

As the contract merely provides that the $75 shall be paid "when," followed by a blank formed by striking out the inappropriate provision of the new car order and that the car shall be delivered on the first of May "or as soon thereafter as practicable," which phrase is followed by conditions not applicable to the situation, it cannot be said that the contract advised plaintiff that the $75 was to be paid on May 1.

It is true that, in order to reform a contract, the evidence of the mistake must be clear, convincing, and satisfactory (*Parchen* v. *Chessman*, 53 Mont. 430, 164 Pac. 531; *Humble* v. *St. John*, 72 Mont. 519, 234 Pac. 475), but, in the light of the ambiguous nature of the contract and the positive statement of the plaintiff, coupled with the fact that defendant did place the Chandler car on blocks, an act unnecessary if delivery was to be made in less than thirty days, the court was warranted in finding that, through a mutual mistake of the parties, the contract as drawn did not express the true agreement or intention of the parties.

However, the contract, as reformed, would give to plaintiff a credit of $225 as the "trade in allowance" on the Chevrolet car, on the purchase price of the Chandler, or $750, leaving a balance due of $525, to be paid as follows: $75 "at the convenience" of the purchaser, and the remainder at the rate of $30 per month, the payments to commence thirty days after the $75 is paid. Thus the contract contains no definite agreement as to the time when the payments are to be made, and, from its provisions, it cannot be accurately determined, if at all, when either party could be said to be in default.

In order to state a cause of action, plaintiff must allege ▮ facts showing that the defendant breached the contract as reformed, which breach would occur only on the failure of

the defendant to deliver the Chandler on the payment of the $75 within the time allowed to the plaintiff to make the payment, or an offer, in good faith, to do so. (*Lehrkind* v. *McDonnell*, 51 Mont. 343, 153 Pac. 1012.) The question then arises as to whether or not the contract, as reformed, is sufficiently definite to be valid and binding.

Where the *object* of a contract is so vaguely expressed "as to be wholly unascertainable, the entire contract is void" (sec. 7501, Rev. Codes 1921), but, if no *time* is specified for the performance of an act required to be performed, a reasonable time is allowed (sec. 7548, Id.). Under these sections the parties to a contract must express themselves in terms direct and explicit enough to enable their full intention to be ascertained to a reasonable degree of certainty (*Schwab* v. *McVey*, 54 Mont. 422, 171 Pac. 277), and if a contract is wholly silent as to the time of performance, and contains no statement from which any particular time may be inferred, a complaint based thereon is insufficient unless it alleges that the contract was to be performed within a reasonable time (*Whitelaw* v. *Vallance*, 60 Mont. 172, 198 Pac. 449). However, a promise to pay when convenient—at the convenience of the maker—is construed as a promise to pay within a reasonable time. (*Newsam* v. *Finch*, 25 Barb. (N. Y.) 175; *Lewis* v. *Tipton*, 10 Ohio St. 88, 75 Am. Dec. 498; *Works* v. *Hershey*, 35 Iowa, 340; *Samuels* v. *Larrimore*, 11 Cal. App. 337, 104 Pac. 1001.)

The contract, as performed, is not, therefore, void, as in effect it provides for the payment of the $75 within a reasonable time, but, in order to state a cause of action for the breach of such a contract, the complaint must allege a time of performance, that is, fix a period which the party charging the breach deems a reasonable time, not that the plaintiff must prove the actual time alleged or fail, but that it may appear what relation time bore to the alleged breach of duty, and that, at least by the plaintiff's own showing, the cause of action had accrued before the commencement of the suit. (See

authorities cited and quotation, in *Whitelaw* v. *Vallance,* above, 60 Mont., at p. 177, 198 Pac. 449.)

As the complaint herein contains no intimation as to what would be a reasonable time within which performance of the contract was required, and, consequently, does not show how long the defendant was required to hold the Chandler car for plaintiff, it would, ordinarily be held insufficient to state a cause of action for the breach of the reformed contract. The complaint, however, alleges that, after holding the car "for several months," the defendant, in violation of its agreement, and without notice to, or the knowledge of, this defendant, sold the Chandler car, and thereafter, being ready, willing and able to pay the $75, plaintiff demanded delivery, which delivery was refused.

Now, "one who sells personal property has a special lien thereon, dependent on possession, for its price, if it is in his possession when the price becomes payable, and may enforce his lien in like manner as if the property was pledged to him for the price." (Sec. 8381, Rev. Codes 1921.) Under the authority thus given, on an executory contract of sale, possession of the property being retained, if the buyer does not pay for the property within the time fixed by the contract, the seller may sell the property in satisfaction of his lien, in the manner provided by statute for the foreclosure on a pledge. (*Welch* v. *Nichols,* 41 Mont. 435, 110 Pac. 89.)

Under the law of pledges, the pledgee may collect what is due him on the pledge by the sale of the property (sec. 8306, Rev. Codes 1921), but before the sale is made the pledgee must demand performance by the pledgor, if he can be found (sec. 8307, Id.), and must give actual notice to the pledgor of the time and place of sale far enough in advance of the sale to permit the attendance of the pledgor at the sale (sec. 8308); the sale must be at public auction, after notice to the public, and the property must be sold for the highest obtainable bid (sec. 8311, Id.).

Where, as here, the contract did not set a definite time for performance, but gave to the buyer a reasonable time in which

to perform, there is more reason for a strict application of the statutory rules than in the case of a contract specifying a particular time. Here the buyer had no means of knowing what the seller considered a reasonable time, and the seller could only terminate the period by demand at the expiration of a reasonable time.

As no demand for performance was made upon the plaintiff, a demand which the defendant was required by law to make before it could sell the Chandler car, even without reformation of the contract, it must be deemed that plaintiff's offer to comply with the terms of the contract was timely, and defendant breached the contract by the unlawful sale of the car before the indefinite period allowed plaintiff had expired.

The final question to be determined is as to whether the court can be sustained in rendering judgment for the plaintiff for the amount credited on his contract for the purchase of the Chandler car, as the amount he was damaged by the breach of the contract.

From a practical point of view, the damage the plaintiff suffered was the value of his Chevrolet car which he turned in and the defendant sold, and for which he got nothing; the value of the car as fixed by mutual agreement was $225. However, our statute declares that "the detriment caused by the breach of a seller's agreement to deliver personal property, the price of which has not been fully paid in advance, is deemed to be the excess, if any, of the value of the property to the buyer, over the amount which would have been due to the seller under the contract, if it had been fulfilled." (Sec. 8674, Rev. Codes 1921.)

Relying upon this statute, defendant contends that there is no evidence in the record warranting a finding that plaintiff was damaged in the sum of $225, with interest, as plaintiff did not attempt to prove the value of the Chandler car and the only proof as to its value is that it was sold for $350, which is considerably less than the amount which would have been due the seller under the contract, this amount being at least $525.

Where no down payment is made on a contract for the purchase of personal property, but the market price of the property has risen between the date of delivery and the time fixed for delivery, the injured party may recover the difference between the contract price and the market price. (*Pritchett* v. *Jenkins,* 52 Mont. 81, 155 Pac. 974.) Where a down payment has been made and the contract is breached by the seller, the purchaser may recover the amount paid and the difference between the contract price and any advance in the market price at the time delivery should have been made. (*Lehrkind* v. *McDonnell,* above.)

In each of the cited cases the "value to the buyer" of the property involved was the market value thereof, as the contracts considered dealt with property having a readily ascertainable market value, and the buyer could have gone into the market and purchased property to take the place of that not delivered. Here the property involved was a "used" car having, so far as the record disclosed, no ascertainable market value.

Owing to the manner in which it had been used, the distance driven, and similar considerations, had the plaintiff been able to go into the "used" car market and secured another Chandler of the same model, the value thereof would be no criterion of the value of the one contracted for. Probably, under the circumstances, the value of both the Chandler and the Chevrolet was inflated.

The most that can be said is that the value of the Chandler car was whatever the seller was willing to take and the buyer willing to pay for it; this value was, by mutual agreement, fixed at $750, and, as the buyer was still willing to stand by the bargain seven months later, we may assume that the contract price was the value of the property "to the buyer."

As to the "trade-in" value placed upon the Chevrolet, it is held that, where a portion of the purchase price of property is paid in property at an agreed valuation (the trade-in price), the presumption, prima facie at least, is that the valuation fixed is the actual value of the property, and where, as here,

the only damage shown is the loss of the property traded in, the agreed value thereof is the amount of compensation which the plaintiff may recover for a breach of the contract. (17 C. J. 867; *Bennett* v. *Phelps,* 12 Minn. 326 (Gil. 216).)

The theory of compensatory damages on breach of contract ▮ is to place the injured party in exactly the position he would have been had there been no breach. (8 Cal. Jur. 742.) Probably as near as one could arrive at a sum which would make the plaintiff here whole is to require payment to him of the value of his Chevrolet, as agreed upon between the parties, and such an award comes within the rule as to the measure of damages declared in section 8674 above, for, in so far as can be determined from the record, or could possibly be proved, that amount is the difference between the value of the Chandler car "to the buyer" and the balance due on the purchase price which is found by merely deducting the trade-in value of the Chevrolet, as fixed by mutual agreement, from the value of the purchased car, also agreed upon between the parties. The price at which the defendant sold each of these cars is not controlling, either as to their actual or market value.

As the defendant breached the contract, whether reformed or not, by disposing of the purchased car without demand upon plaintiff for performance of the contract or notice of intention to sell, the judgment must be affirmed.

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, FORD and ANGSTMAN concur.

Rehearing denied March 8, 1932.