LEWIS, APPELLANT, *v.* LAMBROS, RESPONDENT.

(No. 4,443.)

(Submitted November 15, 1920. Decided November 29, 1920.)

[194 Pac. 152.]

*Sales—Personal Property—Failure of Title—Damages—Executory and Executed Contracts—Stipulations—Failure to Make Payments—Effect on Title.*

Stipulations—Binding on Courts and Parties.
 1. Courts, as well as the parties entering into it, are bound by the provisions of a stipulation that certain alleged facts shall be deemed proven, so long as it remains in force; hence admission of evidence having a tendency to disprove what was by the stipulation judicially admitted, was error.

"Executed" and "Executory" Contracts—Definition.
 2. An "executed contract" is one where nothing remains to be done by either party, and conveys a chose in possession; while an "executory contract" is one in which a party binds himself to do or not to do a particular thing in the future, conveying a chose in action.

Contracts—Executed and Executory.
 3. A contract may be partly executed and partly executory, and may be executory as to one party and executed as to the other.

Sales—Bill of Sale not Necessary to Validity.
 4. A bill of sale is not necessary to make a valid sale of personalty.

Validity of stipulations making rules of evidence, see note in 8 Am. St. Rep. 921.

Same—Executed Contract, When.
    5. Sale of personalty consisting of a house and contents (without the lot on which it was situate) on deferred payments, the agreement not containing any provision for forfeiture of the buyer's rights on failure to make payments or for reservation of title in the seller, *held* to have been an executed, and not an executory contract.

Same—Failure to Make Future Payments—Effect on Title.
    6. Failure to make payment for personal property sold on the installment plan does not of itself restore title to the vendor.

*Appeal from District Court, Silver Bow County; John V. Dwyer, Judge.*

ACTION by C. U. Lewis against P. D. Lambros. From a judgment of nonsuit, and from an order denying his motion for new trial, plaintiff appeals. Reversed.

*Mr. John A. Shelton,* for Appellant, submitted a brief and argued the cause orally.

*Messrs. Walker & Walker* and *Mr. C. S. Wagner,* for Respondent, submitted a brief; *Mr. Thomas J. Walker* argued the cause orally.

MR. JUSTICE HURLY delivered the opinion of the court.

The complaint in this action alleges that on the twenty-fourth day of July, 1916, for a consideration of $3,000 paid by the plaintiff to the defendant, defendant sold and delivered to plaintiff a certain one-story brick building in Butte, together with a stock of confectionery, furnishings and furniture therein contained; that at the time of such sale and delivery the defendant was in the possession of the said property so sold, and represented to the plaintiff that he was the owner of said building, but not of the land on which the same was situated, and that plaintiff relied upon, and was induced to buy the said property because of, such representations. It is further alleged that the defendant on the date of sale had no title to said building, and has not since acquired the same; that on or about the thirty-first day of December, 1917, plaintiff was deprived of the possession of the building by the rightful owner; and that the building was then of the value of

$3,000, for which sum plaintiff claims damages. The answer is a general denial.

At the commencement of the trial a stipulation signed by the respective attorneys for the parties, reading as follows, was introduced in evidence: "It is hereby stipulated and agreed by and between the plaintiff and defendant herein that on the trial of the above-entitled cause it shall be deemed to have been proved that on the 24th day of July, 1916, defendant P. D. Lambros did not own and had no title to that certain building situated at No. 125 West Park street, Butte, Mont., or any part thereof, which building was then and there sold by him to the plaintiff, C. U. Lewis, and that the said defendant has not acquired any title or interest in or to the said building, and that said building was then and is now owned by S. V. Kemper and J. W. Kemper. The defendant may object to proof of said facts or any of them upon ground of irrelevancy, inadmissibility, and incompetency, but waives all right to object to the manner of proof of said facts or any of them."

Plaintiff offered testimony as to the value of the building as of the date he alleged he was dispossessed of the same; and, after testifying that he took possession on the twenty-fourth day of July, 1916, stated that he continued in possession until said December 31, 1917, when he surrendered possession to one Kemper, the rightful owner thereof. On August 18, 1916, plaintiff executed and delivered to a Butte bank his promissory note for $3,000, which note was also signed or guaranteed by defendant. The proceeds derived from the negotiation of such note were paid to defendant.

Upon cross-examination certain documents, identified as Defendant's Exhibits Nos. 2 and 3, were proven, over plaintiff's objection. There was also cross-examination of the plaintiff as to the nature of the transaction and the date and conditions of sale. Exhibit No. 2 was an agreement of the parties, dated August 18, 1916, and recites that a bill of sale had been that day executed by the defendant and placed in escrow in the bank of Butte, that the plaintiff should pay monthly, during the life of the agreement, the sum of $200

to be credited upon the note executed by the parties in favor of said bank, and that, when the entire consideration of $3,000, together with interest thereon, should have been paid, the said bank would deliver to plaintiff such bill of sale. Exhibit No. 3 was a bill of sale, in the usual form, and of the same date as the agreement, and contained an express warranty of title. Payments were thereafter made to the bank upon the note, on which, at the time of the trial, there was a balance unpaid of $1,500, with interest. Plaintiff testified in effect that he ceased making payments because of the claim of ownership of Kemper. The plaintiff contended that the sale itself took place on July 24, 1916, and that the negotiations were oral. At the conclusion of plaintiff's evidence, the court granted a nonsuit. From the judgment entered thereon and from an order denying a new trial, the plaintiff has appealed.

It is apparent that the parties have at other times assumed positions inconsistent with those now maintained. In an action against the bank and this defendant (which had been dismissed as to this defendant) plaintiff alleged an executory contract of date August 18, 1916, failure of consideration on the part of defendant, partial performance by plaintiff, and asked for rescission and return of the money paid under the contract (Exhibit 2)—a position entirely opposed to the one now assumed. To that complaint defendant made answer, entirely at variance with the contention now adopted, alleging a sale to plaintiff and payment by plaintiff to defendant of the entire consideration of $3,000 on said date. However inconsistent these assertions of the parties may be, such inconsistencies could bear only upon the weight to be given their testimony in the present action. But, so far as this case is concerned, it is agreed between them by the stipulation that the sale was effected on July 24, that there was a failure of consideration in that defendant had no title to convey, and that title was actually in another person, leaving the only remaining issue the question of damages.

The plaintiff alleges that he purchased the property on July 24. By the stipulation defendant admits this fact. [1] What relevancy, then, the agreement of August 16, 1916, may

have, it is difficult to ascertain. Its introduction only tended to disprove what the parties had said was to be deemed proven. This court, as well as the trial court, must be bound by the stipulations of the parties. Defendant, having agreed to the truth of certain facts, is in no position to later deny them in the same action, so long as the stipulation remains in force. It must be presumed that the stipulation speaks the truth. As said by Mr. Chief Justice Brantly, in *Spaulding* v. *Stone,* 46 Mont. 483, 129 Pac. 327: "The purpose of such a stipulation is to relieve the parties from the necessity of introducing evidence as to the ultimate fact covered by it. If the fact is material, the court is, as to it, bound by the stipulation. It amounts to a special finding. (Rev. Codes, sec. 6769.)" (See, also, *Phillips* v. *Coburn,* 28 Mont. 45, 72 Pac. 291.)

The rule as stated in Wigmore on Evidence, sections 2588 and 2590, commends itself to our judgment:

"An express waiver made in court or preparatory to trial by the party or his attorney, conceding for the purposes of the trial the truth of some alleged fact, has the effect of a confessory pleading, in that the fact is thereafter to be taken for granted; so that the one party need offer no evidence to prove it, and the other is not allowed to disprove it. This is what is commonly termed a solemn—*i. e.,* ceremonial or formal —or judicial admission, and is, in truth, a substitute for evidence, in that it does away with the need of evidence.

"This judicial admission is sharply marked off from the ordinary or quasi admission, which indeed does not deserve to bear the same name. The latter is merely an item of evidence, available against the party on the same theory on which a self-contradiction is available against a witness. The distinctions between the two have already been examined (*ante,* secs. 1048, 1057). It is enough to note that, as to the effect, the latter is not conclusive; while, as to its form, it may be either implied or express, and need not be either written or made in open court." (Sec. 2588.)

"The vital feature of a judicial admission is universally conceded to be its conclusiveness upon the party making it, *i. e.,* the prohibition of any further dispute of the fact by him,

and of any use of evidence to disprove or contradict it.'' (Sec. 2590.)

It is the position of appellant that the agreement of August 18, 1916, was an executory contract for the sale of the building, and that plaintiff, not having completed performance of the terms to which he had agreed, should not be allowed to assert a claim for damages against defendant, and that, if there was a failure of consideration, his action is in rescission and for return of the moneys paid, with interest; citing *Peuser* v. *Marsh,* 218 N. Y. 505, Ann. Cas. 1918B, 913, and note, 113 N. E. 494; *Bunday* v. *Columbus Mach. Co.,* 143 Mich. 10, 5 L. R. A. (n. s.) 475, and note, 106 N. W. 397.

An executed contract is one where nothing remains to be [2] done by either party. An executory contract is one in which a party binds himself to do or not to do a particular thing in the future. An executory contract conveys a chose in action; an executed contract a chose in possession. A [3] contract may be partly executed and partly executory and may be executory as to one party and executed as to the other. (13 C. J. 245.)

Even were the contract admissible, we think, however, in view of the stipulation—there being no plea of mistake nor attempted reformation—it was a mere agreement to deliver to plaintiff evidence of his title, and not the property itself. Nowhere does it appear that defendant reserved title in himself, nor does the agreement contain any provision for forfeiture of plaintiff's rights should he fail to make the payments agreed upon.

A bill of sale is not necessary to make a valid sale of per-[4] sonalty. In fact, it is a matter of common knowledge that the vast bulk of sales of personal property is not accompanied by any written evidence thereof.

If defendant sold on July 24, the fact that payment was [5, 6] to be made in the future did not necessarily make the sale itself executory any more than would the sale of goods on credit. In such cases title has fully passed, and all that remains to be done is to make payment, and failure to do so does not of itself restore title to the vendor. In our view of

the record, the sale of the property was complete on July 24, 1916, and the transaction as to sale was not in the nature of an executory contract.

Plaintiff made a *prima facie* case, and the motion for nonsuit should have been denied.

The judgment and order appealed from are reversed.

*Reversed.*

Mr. Chief Justice Brantly and Associate Justices Holloway, Matthews and Cooper concur.