No. 13907

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

---

EDWIN R. FILLBACH, DALE FILLBACH,
d/b/a FILLBACH & SONS,

Plaintiff and Respondent,

-vs-

INLAND CONSTRUCTION CORPORATION, INLAND
DEVELOPMENT CORPORATION OF MONTANA; BIG
SKY OF MONTANA, INC., et al.,

Defendants and Appellants.

---

Appeal from:  District Court of the Eighteenth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

Brown, Pepper and Kommers, Bozeman, Montana
William L. Pepper argued, Bozeman, Montana

For Respondent:

Bolinger and Wellcome, Bozeman, Montana
G. Page Wellcome argued, Bozeman, Montana

---

Submitted:  April 27, 1978

Decided:  SEP 2 1978

Filed:  SEP 2 1978

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendant Big Sky of Montana, Inc., appeals from a judgment of the District Court, Gallatin County, foreclosing a mechanic's lien in favor of plaintiffs, Edwin R. Fillbach, individually, and d/b/a Fillbach and Sons.

Big Sky of Montana, Inc., (hereinafter Big Sky) is the developer of a condominium project on land it owns near Bozeman, Montana. Inland Construction Corp. was the general contractor for the project. In early 1974, plaintiff Fillbach submitted a bid for painting and drywall work on the project's Glacier condominiums. Plaintiff's bid was accepted by the general contractor.

Plaintiff and his crew began working on the project, but due to various construction problems not attributable to plaintiff, the project was delayed and expected completion date was extended. In September 1974, the general contractor determined the project would have to be expedited and added several men to plaintiff's crew for that purpose. Thereafter, plaintiff had difficulty meeting his expenses, due in part to the expanded crew which had been assigned to him.

The general contractor promised other subcontractors increases in their contract prices because of the construction delays, but the parties dispute whether plaintiff was promised such an increase. Plaintiff contends his contract was reneg-otiated to a cost-plus basis, but Big Sky contends plaintiff was not promised the increase given the other subcontractors because he was not meeting his contract obligations. Plaintiff did receive regular contract payments, but he did not receive any increase over the contract price specified in his bid.

In January 1975 the general contractor began controlling the money paid to plaintiff for disbursement to his employees, subcontractors and suppliers. Plaintiff was terminated from the project on February 12, 1975, after telling the general contractor he would need additional money to complete his work. Plaintiff received a check in the amount of $457.64 on the day of his termination. Accompanying that check was a lien waiver printed on a form provided by the general contractor. Such lien waivers were procured at the insistence of Big Sky from all subcontractors as they were paid for work performed or labor furnished on the project. Plaintiff executed 37 such waivers upon receipt of approximately 31 checks during the period from January 16, 1974 to February 14, 1975.

After his termination, plaintiff demanded payment he alleged was due under the contract as renegotiated to the cost-plus standard. He duly perfected a mechanic's lien against Big Sky for the balance due under that contract and brought the present action. Named as defendants were the general contractor, Big Sky, and several parties claiming an interest in Big Sky's property. Inland Development Corporation of Montana, the assignee of Inland Construction's interest, was later joined as a party defendant.

The cause was tried before the District Court sitting without a jury. Big Sky was the only defendant involved in this appeal to appear. Inland Construction Corporation and Inland Development Corporation defaulted and the other parties' interests were determined. On April 8, 1977, the District Court entered findings of fact and conclusions of law and judgment in plaintiff's favor. The District Court found plaintiff's lien against Big Sky to be in the amount of

$43,693.94. Plaintiff was awarded that amount, plus costs and attorney's fees in the amount of $21,000. Following denial of its motions to amend and make additional findings of fact and conclusions of law and for a new trial, Big Sky appealed.

Two issues are presented for review: (1) whether the District Court erred in limiting the scope of the lien waivers to the money received as each such waiver was executed, and (2) whether the District Court abused its discretion in awarding a $21,000 attorney's fee.

The first issue concerns the interpretation of the lien waivers signed by plaintiff. Each such waiver was prepared on the following form:

> "RECEIPT AND WAIVER OF MECHANICS' LIEN RIGHTS
>
> N.B. It is important that the following directions be closely followed as otherwise the receipt WILL NOT BE ACCEPTED.
> 1. This is a LEGAL INSTRUMENT and must be executed accordingly by officers of corporations and by partners of co-partnerships.
> 2. It is important that ALL the blanks be completed and that the AMOUNT PAID BE SHOWN.
> 3. If payment is not in full to date, so state, SHOW UNPAID BALANCE, and strike out last three lines.
> 4. A receipt similar to this or legal waiver of lien rights will be required for all plumbing, heating and plastering material, etc.
> 5. NO ERASURES OR ALTERATIONS MUST BE MADE.
>
>
> _____
>                 (date)
>
> The undersigned acknowledges having received payment of_____from_____in full payment of all_____by the undersigned delivered or furnished to (or performed at)_____ and for value received hereby waives all rights which may have been acquired by the undersigned to file mechanics' liens against said premises for labor, skill, or material furnished to said premises prior to the date hereof.
>
>                           By_____"

The District Court's Finding of Fact VII states:

"That on each occasion when the plaintiff would receive payment for work performed and materials furnished, he would sign a lien waiver which lien waiver was solely limited to the amount of money received at that particular time and such lien waiver did not in any way prevent the plaintiff from filing and foreclosing a mechanic's lien for all amounts not covered by the specific lien waivers which were required by the Inland Corporations for each payment which they made to the plaintiff; that this manner of proceeding was requested by the defendant Big Sky of Montana, Inc., and the Inland Corporations were paid an overhead margin and a profit margin on all amounts which they paid to their subcontractors."

The thrust of Big Sky's argument is that the above finding is contrary to the evidence. In this regard Big Sky first contends the Receipt and Waiver of Lien Rights clearly provides for a general waiver of lien rights as to all labor and materials supplied prior to the date any such instrument is signed. Big Sky further contends the District Court should not have allowed testimony which had the effect of varying the terms of the instrument.

In an "Opinion of the Trial Court" which accompanied its decree, the District Court indicated the above finding was based on "oral evidence found true by the Court." That evidence consisted of the testimony of plaintiff and Roger West, the project manager for Inland Construction during the time plaintiff worked at the condominium site. The District Court relied on two statutory exceptions to the parol evidence rule, sections 93-401-13 and 93-401-17, R.C.M. 1947, in admitting the challenged testimony.

Section 93-401-13(2) provides in part that parol evidence is admissible:

"2. Where the validity of the agreement is the fact in dispute. But this section does not exclude other evidence of the circumstances under which the agreement was made, or to which it

relates, as defined in section 93-401-17, or to explain an extrinsic ambiguity or to establish illegality or fraud. * * *"

Section 93-401-17 provides:

"* * * For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret."

Absent an ambiguity which would require parol testimony to explain, the lien releases cannot be varied, contradicted or altered by parol evidence. Larson v. Burnett, (1972) 158 Mont. 421, 427, 492 P.2d 921, 925. Here, however, the circumstances of the parties, their real purpose in executing and receiving the instruments is subject to interpretation and may be proved by parol testimony. See, Thisted v. Country Club Tower Corp., (1965) 146 Mont. 87, 96, 405 P.2d 432, 436-37.

Roger West negotiated and administered all the contracts entered into by Inland Construction with its subcontractors for the condonimium project. He was the only person called as a witness by either side who was familiar with Inland's operations and procedures. He testified:

"Q. Now, these lien releases that we've heard testimony about, what were these used for? And there is a whole series of them here, Mr. West. A. Well, in order to get a payment from Big Sky we'd produce a like amount of dollar lien releases from subcontractors.

"Q. Were -- So each time any subcontractor sought payment from you, you would take a lien release? A. Oh, definitely.

" * * *

"Q. And did you understand when these were taken that whoever the claimant was or whoever was going to work for you had the right to come to you, and they were entitled to additional money at some future time; and they were only signing this lien release for that specific purpose? A. Yes."

-6-

West's testimony was uncontradicted. Big Sky offered no evidence tending to show either Inland Construction or plaintiff intended each lien release to operate as an absolute waiver of all pre-existing lien rights. In the District Court, as here, Big Sky relied on the language of the Receipt and Waiver of Mechanic's Lien Rights. Big Sky cites cases from other jurisdictions which have given such lien releases a general scope and effect, but none of those cases involve a factual situation similar to that of the present case. The course of dealings between the parties clearly indicated that they regarded the lien waivers to be releases only as to the amounts they received at the time of signing the lien waivers.

Here, plaintiff's operation was disrupted from the start. He was beset by difficulties and delays for which he bore no responsibility. He incurred expenses and was compelled to work under conditions not contemplated at the time he submitted his bid. Other subcontractors received increases over their contract prices as a result of similar problems and were apparently able to avoid the financial squeeze plaintiff found himself in. Plaintiff testified he did not receive such increases even though an Inland representative had promised them to him. West testified plaintiff's increases were to be held back "until the end of the contract because he was having trouble at that time taking care of his contract obligations."

When he signed the lien release upon receipt of a check in the amount of $457.64 on February 12, 1975, plaintiff had not received all the money owing under either the original contract or the contract as renegotiated to a cost-plus basis. Under the circumstances and in light of the testimony presented to the District Court, it is clear plaintiff did not then intend

to waive his rights with regard to amounts he had not received by that time. The District Court did not err in ruling plaintiff retained lien rights for money owing to him despite his execution of any of the series of lien releases under these circumstances.

Big Sky's final issue challenges the District Court's award to plaintiff of $21,000 in attorney's fees. The amount awarded corresponds to the amount requested by plaintiff in his complaint. Apparently plaintiff and his counsel entered into a contingent fee arrangement which provided for such an attorney's fee.

No testimony was presented as to the reasonableness of the fee awarded, nor was evidence of any kind offered to support the $21,000 amount. At trial, the parties entered into the following oral stipulation:

> "[plaintiff's counsel]: And, counsel, may it be stipulated that the court may award a reasonable attorney's fee in the prevailing side without the necessity of introducing specific testimony as to the value of it?
>
> "[Big Sky's counsel]: So stipulated."

In State Highway Commission v. Marsh, (1978) _____ _ Mont. _____, 575 P.2d 38, 35 St.Rep. 105, 110, 111, this Court stated:

> "The reasonableness of the attorney fee claimed must be shown by evidence. Rauser v. Totson Irrigation District, supra. A contingent fee contract is not controlling in demonstrating the reasonableness of any attorney fee. [citing cases] An award of attorneys fees must be based on a hearing allowing for oral testimony, the introduction of exhibits, and an opportunity to cross examine in which the reasonableness of the attorney fees claimed is demonstrated."

Marsh did not involve a stipulation as is present here, but its reasoning nevertheless is applicable. The focus is on the reasonableness of the fee awarded, even when there

-8-

is a stipulation. From our review of the record, we do not see an evidentiary basis justifying such a fee.

This was a one-day trial, involving little discovery, in which one of the two principal defendants defaulted. While parties may, of course, waive their right to introduce evidence as to attorney's fees through stipulation, this Court is not thereby bound to accept the reasonableness of the fees awarded. The basis for the fee must appear in the record.

Finally, plaintiff asks this Court to increase the amount awarded him from $43,693.94 to $63,172.93. The $63,172.93 is what the District Court found Inland Construction owed plaintiff; the $43,693.94 reflects a reduction in that amount by a set-off applied by the District Court. In his complaint plaintiff sought $63,172.93. That amount was based on a "statement of receipts and disbursements" prepared by an accountant from figures supplied by plaintiff. At trial plaintiff revealed he had failed to provide the accountant with checks totalling approximately $19,500 received during January and February of 1975.

Big Sky argued in the District Court that the $19,500 should be applied to plaintiff's receipts and reduce the amount owing proportionally. At that time plaintiff's counsel agreed, and in his proposed findings of fact and conclusions of law he used the lower figure as the amount owing on the lien foreclosure against Big Sky. Those findings were adopted by the District Court.

Plaintiff now contends his earlier interpretation was incorrect. He asserts the checks received in 1975 "passed through" his account and cannot properly be included in the computation of the balance owing under his contract with Inland Construction. Big Sky contends the District Court's judgment

-9-

should not be increased, arguing the 1975 checks should be included as money received by plaintiff under the contract.

We note plaintiff does not present this matter in the form of a cross-appeal from the District Court's judgment. Nor did he except to or move to amend the findings of fact in the District Court. The question is raised for the first time on appeal, and under these circumstances it is improperly raised. See Mittelstadt v. Buckingham, (1971) 156 Mont. 407, 414, 480 P.2d 831, 835.

The judgment of the District Court is affirmed as to the amount owing under the lien foreclosure and reversed as to the award of attorney fees. The cause is remanded to the District Court for a hearing to determine reasonable attorneys fees to plaintiff.

_____
Justice

WE CONCUR:


_____
Chief Justice


_____


_____

-10-

Mr. Justice John C. Sheehy concurs in part and dissents in part:

While ordinarily the broad language used in the lien waivers involved here would serve to release the real property from any claim of lien, there are special circumstances existing here which require the result reached in the foregoing Opinion. I concur that the written lien waivers were not effective to release fully the real property, but for reasons differing somewhat from those expressed in the Opinion.

Big Sky of Montana had contracted with Inland as its general contractor to build the condominiums here involved. Inland had taken bids and entered into agreements with subcontractors for specified amounts depending on the amount of work to be done or material to be supplied by the respective subcontractors.

Fillbach, as a subcontractor, was given to understand his work of painting and drywall construction was to be completed by July 1, 1974. However, Big Sky, for reasons of its own, delayed the starting date. When Big Sky did give the go-ahead, the subcontractors found there were changed weather conditions, a strike, and inflated costs which required renegotiation of their agreements. This occurred because the subcontractors, particularly Fillbach, were not able to start their jobs until August 1974. Inland, on the basis of an increased allowance from Big Sky, gave all its subcontractors, except Fillbach, increased contractual amounts. With Fillbach, there was an unwritten understanding he would receive additional compensation when he had completed his work.

Fillbach had contemplated using 4 men, himself and his son for the labor involved. However, Inland intruded in this

sphere and in effect took over the management of Fillbach's job by sending in as many as 8 additional persons (because the weather was closing in) as painters. These extra workers went on Fillbach's payroll, and the periodic payments he was receiving from Inland (which in turn billed Big Sky) were insufficient to meet his obligations. Fillbach began to lose ground financially.

Inland's deal with Big Sky was that Inland would be reimbursed periodically by Big Sky for Inland's payments to the subcontractors, plus 12 percent overhead and 8 percent profit. This deal was the reason Inland required the execution of lien waiver forms with each payment to Fillbach. There were some 37 of these lien waivers executed by Fillbach in return for checks. Thus, all the parties established a course of dealing whereby Fillbach each time, to receive his periodic payment, executed a lien waiver form, which Inland delivered to Big Sky so Inland could get paid. In no case did Big Sky pay Inland more than required by the amount of money expressed on the lien waiver form. The lien waiver forms were just that--printed forms on which each time, the date, the amount of money paid and the signature of Fillbach was entered. This is the reason District Court construed the lien waiver forms to be merely receipts for money paid and nothing more, for that is what they were; and Big Sky was fully aware of this under its arrangements with Inland and all the subcontractors. In fact, when Fillbach's financial trouble began to emerge, Inland not only controlled the employees, but delivered checks to Fillbach's suppliers as co-payees on the checks. Thus, there were no possible lien claimants except Fillbach for the work done by Fillbach. From this it appears the District Court was correct in determining 31 checks supporting 37 typed lien waivers for the exact amount of the checks "tell us that the lien

waivers were for the amount only set forth in the waivers."

Under this arrangement for payment by Big Sky no detriment can be shown to have been suffered by Big Sky if the lien waivers are regarded for what they were, receipts for the amounts stated. Big Sky thereupon paid Inland only those amounts, plus the 20 percent agreed on between Inland and Big Sky. Further, Big Sky is not in the situation of an owner who contracts a building for a specified amount, which he pays and later finds the builder has not paid suppliers or subcontractors. In relying on the lien waivers here, Big Sky was paying out only the amounts shown to have been paid by Inland. In establishing that course of dealing, Big Sky itself treated the lien waivers only as receipts and waivers for the amounts stated. Significantly, not a single witness from Big Sky appeared to dispute this. By tabulating its own records, Big Sky at any time could have determined Fillbach had not been fully paid. Fillbach in his claim has given Big Sky full credit for monies he received from Inland. It would be a gross inequity in these circumstances, if the form language on the lien waivers was to be used to prevent Fillbach from being paid the full contract amount for his completed job.

Moreover, the lien waiver forms are invalid as _full_ and final _waivers_, because there is no consideration to support them. The amount paid Fillbach under each lien waiver instrument is the exact amount set forth in the form. The District Court was correct in construing each lien waiver to extend only to the dollar amounts paid. Big Sky has not been damaged in any respect beyond these amounts.

In Giammarino v. J. W. Caldeway Construction Company (Missouri 1934), 72 S.W.2d 159, the lien claimant, a subcontractor, had a plastering work contract in the amount of

$550. After completion of the work, the general contractor gave the lien claimant a check for $250 in part payment, in return for which the lien claimant executed a document in which he waived any and all lien rights to which he was entitled. The check which claimant had received was returned unpaid upon presentation to the contractor's bank. Meanwhile, the owner of the property, when the claimant's waiver was exhibited to him, paid the general contractor $250 in reliance thereon. In the claimant's action to establish a lien, the owner interposed the waiver as a release. The trial court allowed the owner a credit for the $250 paid the general contractor on the strength of the waiver, but gave claimant judgment for the balance of $300, together with interest, and impressed a lien on the property. The Missouri Supreme Court affirmed staying:

> "Appellants insist here that the Court
> below erred in adjudging respondent
> entitled to a mechanic's lien against
> their property because respondent
> waived his right to such lien by
> executing a lien waiver before mentioned.
> It is manifest, however, that such
> lien waiver was ineffective, for want
> of any consideration to support it, except
> insofar as the appellants in reliance
> upon such lien waiver, made payment
> to the construction company. 40 C.J.
> 314, 340. Since the court allowed
> appellants credit for the payment of
> $250 made by them to the construction
> company, they have no grounds for complaint
> on account of such lien waiver." 72 S.W.
> 2d at 160.

That decision was reaffirmed in Missouri in the case of St. Louis Flexicore, Inc. v. Lintzenich (Missouri 1967), 414 S.W.2d 787, 790. In that case, the Missouri Court said:

> "However sharp may be the distinction between
> waiver and estoppel in other areas of the
> law, it is apparent that as applied in recent
> mechanic's lien cases, such defenses have
> been regarded as virtually synonymous. Instead,

-14-

> the courts have examined the equities
> of the situation in light of the facts,
> and have allowed or denied the lien
> according to the circumstances involved.
> . . .
>
> " . . .
>
> "As those cases demonstrate, the converse
> of that principle is likewise true. That
> is, the invalidity of the lien waiver may
> be successfully asserted by the lien
> claimant if the owner or other person
> interested has not paid out money or
> otherwise changed his position to a
> detriment in reliance upon the waiver.
> That is the situation in the instant
> case. It is undisputed that plaintiff
> did not receive full consideration for
> the lien waiver it executed . . ."

In United States v. Shea-Adamson Company (U.S.D.C.

Minn. 1937), 21 F.Supp. 831, the trial court refused to

recognize an executed lien waiver unsupported by consideration.

Not to be forgotten is the undisputed evidence also

shows Big Sky is holding back from Inland the sum of $115,000.

Although this case was not tried on that theory, that amount

represents a fund against which Fillbach in this case could

have sought the impression of an equitable (not a contractual)

lien and under the law have been successful. Swinerton and

Walberg Company v. Union Bank (Cal. 1972), 101 Cal.Rptr.

665.

For these reasons I concur Fillbach is entitled to

recover judgment against defendants, including Big Sky. I

must however, respectfully dissent from the majority opinion

with respect to attorneys fees and the problem of the

"pass-through" expenses.

First, with regard to attorneys fees. The Opinion puts

the District Court in error for following a perfectly normal

and proper procedure in the trial of a cause--accepting a

stipulation agreed to by the parties and within the power of

the parties to make.

-15-

Under the stipulation, the parties waived the factual requirements of Crncevich (1975), 168 Mont. 113, 541 P.2d 56 and its related cases and placed in the discretion of District Court the determination as to what the reasonable attorney fee should be.

> "Stipulations are recognized by courts generally, and may govern in procedural matters so long as counsel do not thereby attempt to confer jurisdiction where none exists, or where jurisdiction has therefore been lost, or to determine thereby questions of law or the validity of statutory provisions, or to affect rights other than those existing between the parties to the suit in which the stipulation is filed; they may go so far as to waive statutory provisions or irregularities." Hale et al. v. Belgrade Co., Ltd., et al. (1925), 75 Mont. 99, 104, 242 P. 425, 426.

By statute, an attorney has the authority to bind his client in any steps in an action or proceeding by his agreement filed by the clerk or entered upon the minutes of the court. Section 93-2101, R.C.M. 1947.

This stipulation had a double edge. If plaintiff had not prevailed in this case, he would have been subject to an award of attorneys fees against him under the reciprocity statute. Section 93-8601.1, R.C.M. 1947.

The stipulation had a worthy purpose: otherwise the court would have been required to take evidence from both parties as to the value of their services. Most attorneys find such evidence somewhat embarassing and in fact, self-serving. It has not been unusual for attorneys to stipulate that the court, which has some expertise in the field of the value of attorneys' services rendered, fix the fees without the necessity of presenting such evidence. When however, attorneys agree to such a procedure, they should be bound by the result. Here, appellant, having made such a stipulation, now wants out. The Opinion lets him out. In doing so, the

Opinion ignores the time-honored appellate rule where the underlying evidence is absent from the record, the reviewing court will not inquire as to whether the evidence was sufficient to sustain the finding of the court, since under appellate rules, error or prejudice will not be presumed. Valier-Montana Land and Water Company v. Ries (1940), 109 Mont. 508, 97 P.2d 584; Sherbourne Mercantile Company v. Bonds (1944), 115 Mont. 464, 145 P.2d 827. Instead, the Opinion, without a record, in effect determines the awarded fee was unreasonable. The result is a prolongation of the litigation, for which as I have said the District Court is not at fault, and the rule that a party is bound by his stipulation has not been followed. Lewis v. Lambros (1920), 58 Mont. 555, 194 P. 152.

This Court, in theory at least, is supervisor of the legal profession in this State. As such, it should not be blind to the rates being charged for legal services at the present. Lawyers with corporate clients are charging rates up to $75 per hour for their services. Some of the better attorneys are charging more. Lawyers' fees have climbed to these heights because (a) there is galloping inflation going on, (b) the costs of doing business are higher than Everest, and (c) after the lawyer has paid his costs and expenses of staying in business, his net income is still subject to state and federal income taxes.

There are no tax shelters over a lawyer's income for services. It is all hung out, ready for shearing at a full 40 percent or more for the support of the government, including this Court.

It is because hourly rates for attorneys have climbed so high that a substantial portion of our populace is unable to afford attorneys, and in effect would be denied access to the

-17-

court were it not for the contingent fee system. One imagines
what would have happened in this case, if plaintiff had
walked into his lawyer's office and said, "I've got a problem.
The defendant owes me money and won't pay. I want you to
represent me to collect, and if you are successful, I will
pay you at your hourly rate for one day of trial, when we
collect." In that case, plaintiff would still be looking
for an attorney. It is about time some court speaks up about
the advantages the contingent fee system offers to people
who otherwise cannot afford litigation to claim their rights.
The objection to the contingent fee system seems to be the
lawyer might make a profit. Yet who is not in business to
make a profit? Without the profit incentive, we would have
nothing of the advantages of the economic system we so
fondly refer to as "free enterprise". A lawyer is as entitled
to profit as anyone else. The laborer is worthy of his
hire.

Moreover, the value of the plaintiff attorney's services
in this case appear from the face of the record. This was not
an easy case. Plaintiff's attorney picked a narrow legal path
to follow. On one side was a swamp, and on the other, quicksand.
The swamp was the line of authority which holds unless there
is an ambiguity in a written contract, parol evidence at variance
therewith is not admissible. The quicksand was the case law
which holds a written agreement means what it says. The value
of the attorney's services here can not be computed in terms of
time, unless we are going to reduce the status of the attorney
profession to keeping records of "billable time".

Finally, we should observe the purpose of section 93-8614,
R.C.M. 1947, (which is itself a reciprocity statute) providing
for attorneys fees in the foreclosure of mechanic's liens. The

-18-

obvious intent of the legislature in making such provision is that a material man, laborer or subcontractor working on property and enhancing its value who must sue to collect the value of material or services is entitled to be made whole. If it is reasonable that in order to make such collection he must because of financial straits enter into a contingent fee contract with a competent attorney, then the contingent fee contract itself is reasonable in the circumstance. The District Court is entitled to consider that necessarily-incurred costs to the material man or contract in determining proper attorney fees. That is precisely what the District Court did in this case. Justice is not achieved if after the case is over, the contractor counts his net award and is still perhaps 15 percent short of what he should have received under his contract in the first place. He will then have received 85 percent justice, but the remaining 15 percent is injustice.

Second, with respect to the "pass-through" expenses. There is a philosophical and legal inconsistency in an opinion which on the one hand sends attorney fees back to the District Court because there is no record to sustain the attorney fees, but on the other hand refuses to send back the question of the pass-through expenses because there is no record to sustain such expenses. Ideally, what is sauce for the goose should be sauce to the gander.

There appears to me to be substance to plaintiff's claim that the $19,500 which the District Court reduced from his claim because of checks received by plaintiff were in fact "pass-through" expenses which did not serve to reduce the amount due plaintiff on his contract with defendant. Since we are sending the case back anyway, and since our objective in any event should be to achieve justice to the fullest extent, I see no reason why

-19-

the question of "pass-through" expenses should not also be returned for review, to make certain a proper decision has been made.  Otherwise, I suspect, plaintiff will have difficulty understanding the fine quillets of the law that prevent him from receiving his claim of $19,500, but deny him his full attorney's fee.

I dissent from the majority opinion on these points.

John A. Sheehy
_____
                Justice

Mr. Chief Justice Frank I. Haswell dissenting:

I would reverse the judgment of District Court.

The majority find the intentions of the parties that each lien waiver signed by plaintiff released only the amounts he received at the time of signing. This finding is based upon the testimony of plaintiff (subcontractor) and Roger West (an employee of the general contractor).

In my view the judgment cannot stand for at least three reasons: (1) the testimony of plaintiff and Roger West is not admissible in evidence; (2) the clear and unambiguous language of the lien waiver cannot be altered or modified by an oral agreement to the contrary; and (3) plaintiff subcontractor is estopped from asserting his claim here by the reliance of the owner (Big Sky) on the general lien waiver.

A contract is to be construed to carry out the intentions of the parties at the time of contracting, if such intentions are ascertainable. Section 13-702, R.C.M. 1947; Tribble v. Reely (1976), ____ Mont. ____, 557 P.2d 813, 33 St.Rep. 1160. If the contract is ambiguous on its face as to the intentions of the contracting parties, parol evidence can be used to ascertain the parties' intentions. McNussen v. Graybeal (1965), 146 Mont. 173, 405 P.2d 447; Lehrkind v. McDonnell (1915), 51 Mont. 343, 153 P. 1012. But where the language of a contract is clear and explicit that language governs its interpretation. Section 13-704, R.C.M. 1947. As previously stated by this Court:

> "This Court when called upon to interpret the terms of contracts has held that where the terms of the contract are clear and unambiguous the Court will not allow parol evidence. (Citations omitted.)" Kielmann v. Mogan (1970), 156 Mont. 230, 235, 478 P.2d 275.

When a contract is reduced to writing, the intentions of the parties are to be determined by reference to the language

-21-

employed by them and where the language used is clear, certain and unambiguous, oral testimony may not be resorted to. Section 13-705, R.C.M. 1947; Merritt v. Merritt (1974), 165 Mont. 172, 526 P.2d 1375; Safeco Ins. Co. v. Munroe (1974), 165 Mont. 185, 527 P.2d 64.

While parol evidence is admissible to determine the object of the parties in executing and receiving an instrument, this rule was subject to limitations and clarifications. McCaull-Dinsmore Co. v. Stevens (1921), 59 Mont. 206, 194 P. 213.

> "The rule, however, is subject to the qualifi-
> cation that the purpose thus disclosed must not
> be inconsistent with the express terms of the
> instrument, for if the parties have clearly
> stated their purpose in the instrument itself
> no extrinsic evidence will be received to vary
> or contradict it. . ." 32A C.J.S. Evidence
> §960, p. 418-419.

In this case the parties clearly expressed their purpose in the Receipt and Waiver of Mechanics' Lien Rights. Their clear and explicit purpose as expressed by the language of this instrument was to waive any and all pre-existing lien rights up to the date the instrument was signed. The testimony of plaintiff and Roger West contradicted this express purpose and should have been excluded. The parties are bound to the terms of the written lien waiver and cannot contradict or vary its terms by parol evidence.

In finding of fact No. VII, the District Court held the lien waivers were solely limited to the amount received at that time and that waivers did not foreclose plaintiff from an action to foreclose a mechanics' lien for all amounts in excess of those received. The District Court in this finding went on to say ". . . that this manner of proceeding was requested by the defendant Big Sky of Montana, Inc." In my view the record is barren of any evidence to support this finding. On the

contrary, the record supports a finding that owner (Big Sky) was a stranger to this agreement between the subcontractor and the general contractor.

The oral agreement between subcontractor and general contractor is unenforceable. The written lien waivers cannot be modified by any oral agreement between plaintiff and Inland Construction Company, the general contractor. A contract in writing can only be modified or altered by another contract in writing or by an executed oral agreement. Section 13-907, R.C.M. 1947; Ikovich v. Silver Bow Motor Co. (1945), 117 Mont. 268, 157 P.2d 785. Here, there is neither a written agreement modifying the lien waivers nor an executed oral agreement.

In my view, plaintiff subcontractor is estopped from asserting his claim in this suit by the reliance of the owner (Big Sky) on the general lien waiver. The general rule has been stated in this language:

> "A subcontractor . . . is estopped to assert a lien where the owner has settled with the contractor or made payments to the contractor . . . , in reliance on the subcontractor's . . . receipt for the amount due him, his statement that he has been paid by the contractor, his representation that he will not look to the owner for payment of work performed or materials furnished, . . ." 57 C.J.S. Mechanics' Liens §230, p. 804.

Here, Big Sky made its payments to the general contractor because the general contractor presented lien waivers signed by the subcontractor to it. Big Sky did not know the language of these waivers had been contradicted by an oral agreement between the subcontractor and the general contractor. The subcontractor cannot, at this late date, assert that he signed a written general waiver of his lien rights, but his intent was not to waive those rights.

In effect, the majority is obligating the owner of the condominium project, Big Sky, to pay the excess amounts claimed

-23-

by the subcontractor under a course of dealings between the general contractor and plaintiff subcontractor to extract monies from the owner Big Sky. I do not believe this Court should condone such a scheme.

For the foregoing reasons, I would reverse the judgment of the District Court and enter judgment for the defendant.

_____
Chief Justice