MR. CHIEF JUSTICE HASWELL
dissenting:
I dissent.
The majority decision in this case paves the way for disgruntled spouses to come into court at any time for a review of their written property settlement agreements. Not only does this violate settled contract law, but it circumvents the purposes of the Uniform Marriage and Divorce Act as adopted in this state. Section 40-4-201(1), MCA provides the procedure by which parties to a marriage can enter into a written agreement setting forth their respective rights and obligations upon termination of their marriage:
“Separation agreement. (1) To promote amicable settlement of disputes between parties to a marriage attendant upon their separation or the dissolution of their marriage, the parties may enter into a written separation agreement containing provisions for disposition of any property owned by either of them, maintenance of either of them, and support, custody, and visitation of their children.”
This agreement is binding upon the court, unless the court finds it to be unconscionable:
“(2) In a proceeding for dissolution of marriage or for legal separation, the terms of the separation agreement, except those providing for the support, custody, and visitation of children, are binding upon the court unless it finds, after considering the *517 economic circumstances of the parties and any other relevant evidence produced by the parties, on their own motion or on request of the court, that the separation agreement is unconscionable.” Section 40-4-201(2), MCA.
The district judge, in entering the decree of legal separation of December 19, 1978, made several findings with respect to the parties’ written property settlement agreement:
“2. That the Property Settlement Agreement of the parties, dated December 5, 1978, is made a part of this Decree.”
“6. That said Property Settlement Agreement is not unconscionable.”
Once such findings are entered by the District Court, the UMDA further provides that “[t]erms of the agreement. . . are enforceable . . . as contract terms.” Section 40-4-201(5), MCA. In enforcing property settlements as contractual agreements, this Court has consistently relied on Montana contract law to find that a written instrument supersedes all oral negotiations which occurred prior to or simultaneously with the execution of the written agreement. Section 28-2-904, MCA; Merritt v. Merritt (1974), 165 Mont. 172, 178, 526 P.2d 1375, 1379.
Both parties to this action admit to extensive negotiations and discussions prior to signing this agreement. Mrs. Harris acknowledged in court that “. . . for a whole year we discussed in many ways [sicj of settlement. Every time he decided to divorce me again, we would come up with another type of settlement.”
Finally, on December 5, 1978, the parties did sign a written settlement agreement, disposing of their real and personal property. At that point in time they fixed their rights and obligations with respect to their property, Miller v. Miller (1980), 616 Mont. 313, 616 P.2d 313, 37 St.Rep. 1523, 1526, and their prior discussions about disposition of their property were no longer determinative. Section 28-2-904, MCA.
*518 The district judge made no factual finding that the parties had entered into a separate enforceable oral agreement. Rather, he concluded that the property settlement finalized the parties’ property disputes and was a complete and final property agreement except that it was deficient with respect to insurance and the car. There were no allgations of, or findings of, fraud, mistake or overreaching, nor was any reason given to explain why these items were not included in the agreement. Yet the District Court and this Court are prepared to rewrite this written property agreement, signed voluntarily by both parties, and in the presence of their own attorneys.
The majority characterizes the car and the insurance as matters which would not necessarily be covered by the property settlement agreement, but rather as items of “future support” that could be the subject of a separate agreement. Yet there was no factual finding of a separate support agreement, and in fact, the district judge implicitly noted in his findings that these two items were merely omissions from the property settlement, and in awarding these to Mrs. Harris, the district judge found that the same consideration supported the award of these items as supported the other property distributed to her.
I do not dispute the power of the District Court judges in Montana to modify a property settlement. Section 40-4-208(3) provides:
“(3) The provisions as to property disposition may not be revoked or modified by a court, except:
“(a) upon written consent of the parties; or
“(b) if the court finds the existence of conditions that justify the reopening of a judgment under the laws of this state.
But there was no finding made by the district judge which justifies the reopening of this judgment. There was no finding of fraud, mistake, misrepresentation, or any other condition which allows the rescission or modification of a contract. This contract was modified only because the court found it to be “inequitable,” despite the judge’s earlier finding that the agreement was not “unconscionable.”
*519 It is unfortunate if one party to an agreement neglects to include terms which in retrospect that spouse feels should have been included. But this is no reason to overturn the age-old law of contracts, which seeks to preserve the sanctity of a written agreement, and allows parties to it to be apprised of their rights and obligations under that agreement.