No. 13857

IN THE SUPREME COURT OF THE STATE OF MONTANA

1978

LUCY M. HAYDEN, DANIEL C. HILL
and MARY A. HILL,

Plaintiffs and Respondents,

-vs-

FERN SNOWDEN, ORNTHA SNOWDEN,
DONALD L. WALTERS, and CLARICE L.
WALTERS,

Defendants and Appellants.

Appeal from: District Court of the Fifth Judicial District,
Honorable Frank E. Blair, Judge presiding.

Counsel of Record:

For Appellants:

W. G. Gilbert III argued, Dillon, Montana

For Respondents:

Burns and Dwyer, Dillon, Montana
Robert C. Dwyer argued and Richard F. Burns argued,
Dillon, Montana

Submitted: March 6, 1978

Decided: MAR 30 1978

Filed: MAR 2C 1978

Thomas J. Kearney
Clerk

Mr. Justice Daniel J. Shea delivered the Opinion of the Court.

Defendants Fern and Orntha Snowden and Donald and Clarice Walters appeal from a judgment of the District Court, Beaverhead County, granting plaintiffs Lucy Hayden and Daniel and Mary Hill an easement across property owned by defendants.

The dispute concerns the boundary line of a roadway which runs north from a county road to plaintiffs' agricultural property. This roadway, described by the parties as a lane, abuts the easternmost border of defendants' properties for a portion of its half-mile length, and is located approximately three miles north and east of Dillon, Montana, in Beaverhead County. Old fence lines, in existence as early as 1912, flank the lane. Remnants of this fence line on defendants' side of the lane were still standing when the present dispute arose.

Defendants Snowden purchased their property in 1970. It adjoins and is to the north of property bought by defendants Walters in 1970. In 1971, defendants began to fence their properties as required by their purchase contracts. A survey had established that defendants' easternmost boundaries extended approximately 8 feet to the east of the old fence line running alongside the lane. Defendants set fence posts on the property line, inside the old fence line, thereby narrowing the lane from its previous width of 35 feet to a width of 27 feet along defendants' properties.

The other side of the lane had been recently fenced. George Webster, who had owned the land to the east of defendants' properties since 1969, began subdividing and selling small tracts of that land in 1971. His subdivision design allowed for a right-of-way 26 feet in width along its westernmost side to provide access for the tract owners. Measured from the property line dividing Webster's property from that of defendants, this 26 feet

-2-

of right-of-way constituted most of the then-existing lane. The remainder of the lane's width, from its westernmost barrow pit to the old fence line on defendants' side of the lane, is the subject of the present action.

Plaintiffs objected to defendants' fencing operations as soon as they began and later circulated a petition to have the lane declared a county road. While action on this petition was pending, plaintiffs brought the present suit to establish an easement across a strip of land approximately 8 feet in width along defendants' easternmost boundaries and to enjoin defendants from erecting the new fence.

The cause was tried before the District Court sitting without a jury. In its findings of fact and conclusions of law, the District Court determined plaintiffs had acquired a nonexclusive easement of right-of-way across those portions of defendants' properties lying inside the old fence line. Following a hearing on defendants' motions to alter or amend the findings and conclusions, and exceptions thereto, the District Court entered its decree in plaintiffs' favor.

The issues for review are:

1. Whether the District Court erred in granting plaintiffs a nonexclusive easement across defendants' properties?

2. Whether such an easement could properly extend beyond the old fence line into defendants' properties?

The long standing rule governing the acquisition of prescriptive easements was recently stated by this Court in Harland v. Anderson, (1976), 169 Mont. 447, 451, 548 P.2d 613:

> "To establish the existence of an easement by prescription, the party so claiming must show open, notorious, exclusive, adverse, continuous and uninterrupted use of the easement for the [5 year] statutory period prescribed by section 93-2507, R.C.M. 1947."
> (Bracketed material supplied.)

The standard review in a nonjury case is simply to determine if there is substantial evidence to support the findings of the trial court. This Court will not reverse such findings of fact unless there is a clear preponderance of evidence against the findings. Merritt v. Merritt, (1974), 165 Mont. 172, 177, 526 P.2d 1375.

Defendants' central contention is that the lane's use was neither continuous nor uninterrupted. There was testimony that the lane was overgrown with grass at various times and was occasionally used to pasture livestock. The sodded surface of the lane became treacherously slick when wet, and at times the lane was impassible due to standing water or drifting snow. These facts, which are not disputed, tend to show the lane was not a well traveled thoroughfare.

There was conflicting testimony as to the extent of the lane's use during the time any of the witnesses observed it. Carl Guidici, a long-time resident of the area, testified he had used the lane while going to school beginning about 1912. Plaintiff Lucy Hayden, who had purchased the property at the north end of the lane with her husband in 1939, testified she and her family had used the lane continuously since 1938, the year she first moved to the area. Her daughter and son-in-law, plaintiffs Daniel and Mary Hill, also testified to irregular but continuous use of the lane up to the time the present action was brought.

Keith Taylor, who sold defendants their properties, testified that during the three years he owned land adjacent to the lane, he had not seen anyone use the lane. Defendants' testimony for the most part was to the effect that the lane's use was slight. Defendant Donald Walters did testify he had seen farm equipment that he believed was owned by plaintiffs going down the lane "once or twice a week" within a year or so after he moved onto

his property, and that the lane was used year round. George Webster also testified to having observed some traffic in the lane in the years preceding his subdivision of the property to the east of the lane.

There is no dispute that after Webster subdivided his property the lane was used more frequently by a greater number of persons than before. Webster's grading of the lane and creation of barrow pits along its sides to facilitate drainage made travel on the lane easier. Testimony offered by the parties as to the lane's use conflicted with respect to that use prior to the time of Webster's development of his property.

That use was not interrupted by the act of the owner of the land until defendants began erecting their fences in 1971, and while the evidence was conflicting, there is substantial evidence that the lane's use was not voluntarily abandoned by plaintiffs. The use was, therefore, "continuous and uninterrupted" for the full statutory period. Scott v. Weinheimer, (1962), 140 Mont. 554, 560, 374 P.2d 91.

While most of the testimony showing use of the lane was plaintiffs' use, it appears that others had used the lane at various times and for various purposes since the lane was first established. The District Court's findings that the lane's use was continuous and uninterrupted and nonexclusive from 1938 until the commencement of the present action are sustained by the evidence.

Defendants next contend plaintiffs' use of the lane was permissive rather than adverse. Defendants rely on testimony of Donald Walters concerning a statement Lucy Hayden allegedly made when she first confronted defendants over their placement of the new fence. According to Walters, Hayden told him Webster had left her 26 feet of right-of-way. Defendants characterize this statement as an admission against interest showing permissive use.

Defendants also assert that nonadverse use is established by the presence of a gate at the south end of the lane. This gate, installed by Webster in 1969, consisted of a couple of panels. It was not equipped with a lock, but it did have "no trespassing" signs attached. Webster testified he installed the gate to prevent livestock from wandering off and that the gate was left open when there was no stock in the lane.

There was conflicting testimony as to whether Webster asked plaintiffs' permission to install the gate. Webster testified he asked no one's permission; Lucy Hayden and Daniel Hill testified Webster had asked their permission before installing the gate. Hayden also testified that Webster's predecessor in title, a Mr. Sullivan, had earlier closed off the lane's south end with a gate. She testified Sullivan had asked her permission before putting up the gate, that it was put up to allow livestock to graze in the lane, and that Sullivan did not keep it up continuously.

While the presence of a gate across a roadway is strong evidence of a mere license to pass over a designated way, Taylor v. Petranek, (1977), ____ Mont. ____, 568 P.2d 120, 34 St.Rep. 905, 910, it alone will not defeat a prescriptive easement. In Scott v. Weinheimer, supra, this Court stated that while gates across an easement will overcome the presumption that an unexplained use is adverse, the easement will not fail because of the presence of a gate if there is evidence of adverse use. In Kostbade v. Metier, (1967), 150 Mont. 139, 145, 432 P.2d 382, one ground for a challenge to a prescriptive easement was the presence of a gate in a roadway. This Court upheld the easement, emphasizing that the gate's purpose was not to control traffic on the road and that it did not hinder use of the road.

In the present case there was testimony that the gate was closed and had grown shut with grass shortly after defendants moved onto their properties. Conflicting testimony indicated the gate remained closed only at irregular intervals.

Having heard the testimony summarized above, the District Court found plaintiffs' use of the lane to have been adverse rather than permissive. Neither Lucy Hayden's alleged statement concerning the basis of her claim to an easement nor the presence of the gate at the south end of the lane supply evidence sufficient to overturn that finding.

Defendants next contend the District Court granted an easement across portions of their properties outside the old fence line which defined the lane's perimeter, and argue such an easement cannot be properly granted. There was no evidence anyone used the land to the west of the old fence line for travel. A grant of an easement of right-of-way across such land, therefore, would be improper since the easement would exceed the greatest use of the land during the prescriptive period. Povah v. Portmann, (1967), 149 Mont. 91, 97-98, 423 P.2d 56.

It is not clear whether the District Court's decree has the effect of granting an easement beyond the old fence line. The description of the granted easement is identical to the description used by plaintiffs in their complaint. The easement is described in terms of its center line:

> "Commencing at the north quarter corner of
> Section 5, Township 7 South, Range 8 West;
> thence North 89°54' East 1330.8 feet to the
> point of beginning of said center line;
> thence South 0°35' West 2639 feet, Together
> with 17-1/2 feet on either side of the cen-
> ter line on the north end of said easement
> and 16-1/2 feet on either side of said cen-
> ter line on the south end of said easement."

The parties dispute whether the easement as described corresponds to the lane as defined by the old fence lines, with de-

fendants asserting it does not and asserting substantial correspondence. The District Court's findings make it clear that only the existing lane was intended to be included in the easement granted. At the time this Court heard arguments on this case, plaintiffs filed an offer of stipulation pursuant to which they agree that they are not claiming any easement across land outside the old fence lines. If and to the extent that the District Court's description of the easement does include land beyond the old fence lines, it is defective.

The parties are entitled to an accurate description of the granted easement. On the motion of either party, the District Court is directed to hear and decide whether its description is accurate, and to reform the description if it is not.

The roadway within those fence lines, approximately 35 feet in width, would be properly included in an easement established by plaintiffs' prescriptive use. While defendants contend plaintiffs have shown no need for a right-of-way greater than 16 feet in width, substantial evidence supports the District Court's finding that the lane's full width is necessary for the easement's enjoyment.

Defendants have shown the evidence conflicting; but they have failed to show a preponderance of the evidence against any of the District Court's findings. The District Court judgment granting an easement of right-of-way across those portions of defendants' properties which lie within the old fence line is therefore affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
Justices

_____
Hon. M. James Sorte,
District Judge, sitting in the
vacant seat on the Court.

-8-