No. 14671

IN THE SUPREME COURT OF THE STATE OF MONTANA

1979

---

KNIGHT AND COMPANY, a partnership,

        Plaintiff and Respondent,

-vs-

THOMAS MANARAS and KAY MANARAS,

        Defendants and Appellants.

---

Appeal from: District Court of the Twelfth Judicial District,
        Honorable B. W. Thomas, Judge presiding.

Counsel of Record:

    For Appellants:

        Marra, Wenz, Iwen and Johnson, Great Falls, Montana
        Joseph Marra argued, Great Falls, Montana

    For Respondent:

        Morrison, Ettien and Barron, Havre, Montana
        Robert D. Morrison argued, Havre, Montana

---

        Submitted: September 17, 1979

        Decided: NOV 1979

Filed: NOV 1979

_Thomas J. Kearney_ Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Thomas and Kay Manaras, husband and wife appeal from a judgment of the Hill County District Court entered on behalf of Knight and Company (hereafter referred to as Knight), in the amount of $75,000, as the reasonable value of architectural services rendered to the Manarases.

The Manarases own an interest in the Fair Hotel and some adjacent property in Havre, Montana. They consulted Knight, an architectural firm, in 1969 concerning plans for remodeling or replacing the hotel. In 1970, Knight and the Manarases orally agreed to the preparation of drawings to accompany a feasibility study for a new hotel. Knight prepared schematic sketches which were shown as exhibits in the feasibility study put together by Brelsford, McKee and Associates.

After a two year hiatus during which the project remained dormant, the project was revived in the spring of 1973, and a second, updated feasibility study was prepared complete with sketches drawn by Knight. Several meetings ensued. Manaras received an itemized, preliminary cost estimate for the proposed construction by a letter from Knight dated October 18, 1973. Included in this itemized figure was an architectural fee of $123,259.

Knight proceeded with drafting the plans for the proposed hotel to the extent that contract bids were obtainable. Thomas and Kay Manaras notified Knight by letter dated August 2, 1974 to discontinue work on the project. Knight responded by a letter dated August 21, 1974 and advised Manaras that ". . . we have proceeded on your behalf in this matter and even if you should wish to abandon your efforts, we are entitled to be paid for our services."

-2-

There exists a conflict in the evidence as to the understandings of the parties. Kenneth Knight, a partner in Knight, and Robert Taylor, also a partner and branch manager of the Knight office in Havre, contend there existed an express oral agreement entered into around November 1970, in which Knight was to prepare the feasibility sketches for the first feasibility study and for which Knight would be paid $1,000 if the project did not go forward. If the project did go forward, Knight was to be engaged as the architect for the project at a normal fee with the $1,000 indebtedness becoming merged into the architectural fee. Knight and Taylor contend that the same agreement was made concerning the sketches for the second feasibility study.

The Manarases deny any such verbal agreement and contend that they were told by Knight and Taylor several times that Knight was an expert at obtaining financing and would find financing for the project and that the payment of the architectural fees was contingent upon Knight finding financing for the project.

The trial court concluded that an oral agreement was entered into between the parties by which Knight was to furnish architectural services to the Manarases but no express agreement was reached as to the amount of compensation for the services. The trial court found an implied agreement at law to pay the reasonable value of the services performed in the amount of $75,000 and entered judgment accordingly.

The sole issue presented on this appeal is whether there exists substantial evidence on the record to support the finding of the trial court that there was an implied agreement at law between the parties whereby the appellants were to pay $75,000 as the reasonable value of the services rendered by the

-3-

respondent to the appellants. We find that the record does sustain such a finding and affirm.

The standard of review in a nonjury civil case is simply to determine if there is substantial evidence on the record to support the findings and conclusions of the trial court. Hornung v. Estate of Lagerquist (1970), 155 Mont. 412, 420, 473 P.2d 541, 546; Cameron v. Cameron (1978), _____ Mont. _____, 587 P.2d 939, 944, 35 St.Rep. 1723, 1728.

When reviewing evidence, this Court must do so in the light most favorable to the party which prevailed in the District Court. Cameron, 587 P.2d 945; Arrowhead, Inc. v. Safeway Stores, Inc. (1978), ____ Mont. _____, 587 P.2d 411, 413, 35 St.Rep. 1830, 1832.

> ". . .'Substantial evidence' is evidence such
> 'as will convince reasonable men and on which
> such men may not reasonably differ as to whether
> it establishes the [prevailing party's] case, and,
> if all reasonable men must conclude that the
> evidence does not establish such case, then it
> is not substantial evidence.' (Citing cases.)
> The evidence may be inherently weak and still
> be deemed 'substantial' and substantial evidence
> may conflict with other evidence presented.. . ."
> Cameron, 587 P.2d 944.

As in Cameron, most of the evidence presented at trial consisted of the testimony of witnesses and as a result, the credibility of such witnesses is important on appeal. In the present case there was a conflict in testimony between the Knight partners and the Manarases as to the terms of compensation for the sketches drafted for the feasibility studies. However, as we stated in Cameron, and we reaffirm here: "'The credibility and weight given the witnesses, however, is not for this Court to determine. This is a primary function of a trial judge sitting without a jury;. . .'" Cameron, 587 P.2d 945.

-4-

In the same manner the understandings of the parties as to the manner of financing the hotel project is in conflict. Here the District Court decided that the evidence was insufficient to establish that respondent had any "responsibility" to obtain financing for the project. We will not interfere with this factual determination.

> ". . . We will not substitute our judgment for that of the trier of the fact, but rather will only consider whether substantial credible evidence supports the findings and conclusions. Those findings will not be overturned by this Court unless there is a clear preponderance of evidence against them. We will view the evidence in a light most favorable to the prevailing party, recognizing that substantial evidence may be weak or conflicting with other evidence, yet still support the findings. Finally, where the credibility of witnesses is of prime importance, as it is here, the determination of the weight given to the testimony is the primary function of the trial judge sitting without a jury and not that of this Court." Cameron, 587 P.2d 945.

Applying the foregoing standard of review, we hold that the findings and conclusions of the District Court are sufficiently supported by the evidence.

The judgment of the District Court is affirmed.

_____
　　　　　　　　　　Justice

We Concur:

_____
　　　　Chief Justice

_____

_____
　　　　Justices

Mr. Justice John Conway Harrison dissenting:

I must respectfully dissent to the majority opinion. Here, for the trial court to find an agreement was achieved between the parties, it was required to find that there was a meeting of the minds of the parties with regard to every term necessary to accept a valid enforceable contract. The evidence shows, and the court's own findings of fact and conclusions of law show, that the trial court specifically found to the contrary.

In Finding of Fact No. 5 the court found in part: ". . . There was no meeting of the minds relative to the compensation to plaintiff for this service."

In Finding of Fact No. 10 the court found in part: ". . . There was never any meeting of the minds of the parties as to a definite completion date, or as to the amount of plaintiff's compensation or how or when the compensation would be paid."

Finding of Fact No. 11 states in part: ". . . plaintiff never did send defendant a statement of services rendered or demand payment until after defendants notified plaintiff to cease work on the project."

The court then concluded in its Conclusion of Law No. 2: "An oral agreement was entered into between the parties . . . but no express agreement or contract was reached insofar as plaintiff's compensation was concerned."

It then concluded in its Conclusion of Law No. 3: "The law will imply an agreement to pay the reasonable worth of services . . . where there is no agreement with reference to compensation . . . ."

Under the facts presented to the court and its findings of fact and conclusions of law, it is incredible to me that,

four years after plaintiff entered into this so-called oral agreement, it would then send to defendants a bill for the sum of $75,000.

Accepting that the standard of review of a nonjury civil case is to determine whether there was substantial evidence in the record to support the findings and conclusions as set forth by the majority in this case, the exception to this rule is that we will not reverse unless there is a clear preponderance against the findings of fact and conclusions of law. See Hayden v. Snowden (1978), _____ Mont. ____, 576 P.2d 1115, 35 St.Rep. 367. Viewing the entire record, I find that the evidence clearly preponderates against the findings and conclusions made by the District Court. The court, by its very own findings previously referred to, found that there had been no meeting of the minds relative to the compensation (see Finding of Fact No. 5), that there had been no meeting of the minds concerning a completion date or an amount of compensation (see Finding of Fact No. 10), and that there had been no statement ever sent to defendants for services (see Finding of Fact No. 11).

In addition, I find that the evidence is so overwhelming that if plaintiff Knight and Company had any contract at all, it was a contingent fee arrangement and Knight's testimony to the contrary, i.e., that the company never entered into contingent agreements was overwhelmingly impeached by disinterested parties and his own employees.

Finding no "substantial credible evidence" to support the conclusion of the trial court that there was an implied agreement to pay "a reasonable worth of services," I would

reverse the judgment and return the matter for reconsideration by the trial court.

_____
                    Justice

Mr. Justice Gene B. Daly dissenting:

I concur with Justice Harrison and would add that the only testimony offered in favor of the majority position was incredible and not worthy of belief and therefore should not have been accepted.

_____
                    Justice

Mr. Justice Daniel J. Shea concurring:

I would affirm the judgment, simply because I do not believe that this Court can say as a matter of law that the testimony of the architect seeking to recover his fee, was so inherently improbable it should have been rejected by the trial court. The evidence was for him to judge, and apparently, he did so. This is not to say however, that I do not have some real problems with this case and the law which apparently permits a trial judge to avoid the crucial issue such as appeared in this case--namely, whether the architect was worthy of belief. If nothing else, this case is a prime example of the tremendous power of a trial judge.

As I view the record, and had I been the trial judge, I do not believe I would have given much weight to the testimony of the architect. Perhaps I would have even concluded that he was totally unworthy of belief. But, at least by the implications of its decision, the trial court has concluded that he was worthy of belief. Unfortunately, the trial court did not address in its findings or in an opinion, its assessment of the architect's testimony. This case perhaps illustrates the inherent weakness of findings of fact as a vehicle of decision, insofar as they shed any light on how or why the trial court reached its decision. Normally, the findings reflect the thinking of counsel for the prevailing party, rather than the thinking of the trial judge.

The findings are too often a method of evading what I believe to be a fundamental function of a trial judge when conducting bench trials--that of assessing and weighing testimony and evidence, and then setting forth for the record what that assessment is. Here, the crucial issue of just how the trial court considered, or even whether it considered the obvious conflicting and impeached

testimony of the architect, is not made known to the parties or to this Court. Thus, as a reviewing court, we must remain content with the general findings and conclusions which never went to the heart of the issue as to whether the architect was a credible witness.

The entry of porous and vacuous findings of fact, does not, furthermore, provide any solace to a nonvictorious litigant who must undertake an appeal never knowing just how the trial court regarded the testimony of a crucial witness, such as the architect in this case.

Therein lies much of the fault of the almost exclusive reliance by the trial courts on the entry of findings and conclusions as permitted by Rule 52(a), Mont.R.Civ.P. The trial courts should be reminded that Rule 52(a) also permits findings and conclusions to be set forth in the form of a memorandum opinion, something which undoubtedly would, in the long run, be much more satisfactory to the litigants and to a reviewing court. I would venture to say that the public would also be much more satisfied with the judgments of the trial courts if they explained the reasons for their decisions.

Justice

-10-