No. 14947

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

---

MONTANA WILLIAMS DOUBLE DIAMOND,
a Montana Corporation,

Plaintiff and Appellant,

vs.

ROYAL VILLAGE, INC., a Montana Corporation,

Defendant and Respondent.

---

Appeal from:   District Court of the Eighteenth Judicial District,
County of Gallatin,
Honorable W. W. Lessley, Judge presiding.

Counsel of Record:

For Appellant:

Goetz and Madden, Bozeman, Montana
William Madden argued, Bozeman, Montana

For Respondent:

Bolinger, Higgins and Andes, Bozeman, Montana
Hal Bolinger argued, Bozeman, Montana

---

Submitted:  February 25, 1980

Decided:  MAR 12 1980

Filed:
MAR 1 1980

_Thomas J. Kearney_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

Montana Williams Double Diamond Corporation appeals from a judgment issued pursuant to a show cause hearing in Gallatin County District Court, declaring that the Corporation forfeited all rights under contracts entered into with Royal Village, Inc. and ordering the cancellation of all such contracts together with an accompanying note and mortgage given to the Corporation by Royal Village, Inc.

Montana Williams Double Diamond Corporation (hereafter referred to as Montana Williams) is a Montana corporation whose principal business is a real estate sales business under the fictitious and unregistered name of Double Diamond Properties. Double Diamond Properties is operated by Lillian E. Williams, a real estate broker licensed under Montana law.

In November 1977, Wallace Diteman, a construction contractor, approached Lillian Williams concerning his interest in purchasing property for a subdivision development. Through her brokerage efforts, Diteman later purchased an approximate 300 acre parcel west of Belgrade, Montana, in the name of Royal Village, Inc. (hereafter referred to as Royal Village). It was agreed that the commission owing on the purchase "would be deferred and picked-up somewhere along the way." Subsequently two attempts were made to pay the deferred commission but the various agreements fell by the wayside.

Meanwhile, Royal Village began developing the Royal Village subdivision consisting of approximately 268 lots. Royal Village estimated 1.2 million dollars was necessary for required improvements. Royal Village was never successful at financing the construction project. In the fall of 1978, Royal Village approached Montana Williams with a plan to generate working capital. Montana Williams entered into an agreement dated September 29, 1978, agreeing to purchase 137

-2-

lots from Royal Village for the total sum of $748,663.04 payable as follows: earnest money of $3,946.70, consisting of the sum of $2,700 plus a credit for title insurance of $1,246.70; down payment of $266,053.30 payable on the date of closing; and the balance of $478,663.04 together with interest at the rate of 10% from September 15, 1978, was to be paid in two installments, one of $230,000.50 toward principal and interest on or before December 1, 1978, and the balance of the principal and accrued interest on or before December 1, 1983. The date of closing was designated as September 15, 1978.

As part of the same transaction, Diteman and Double Diamond Properties entered into an exclusive real estate listing agreement giving Double Diamond the sole right to sell the lots in Royal Village Subdivision, exclusive of the lots included in Phase I, for a period of five years. No sales were ever consummated.

In order to accomodate the cash generation function of the contract, the agreement provides in paragraph 2(H) for partial releases of lots for payments under the purchase contract. Pursuant to paragraph 2(G) of the contract for sale, five lots set forth on Exhibit A to the contract were to be released upon payment of the closing amount. Release of the remaining 132 lots, listed on Exhibit B of the contract was to be, according to paragraph 2(H), upon payments on the principal balance due at the rate of 77 cents per square foot for each lot proposed to be released. Deeds for these 132 lots were to be deposited with an escrow agent who was to deliver such deeds to the purchaser upon determination that the rate for the lot sought to be released had been paid. In the event of Montana Williams' breach, Royal Village was entitled under paragraph 5, to forfeit Montana Williams' interest under the

-3-

agreement by giving the notices therein required. However, any lots previously released would not be subject to forfeiture.

Additionally, Royal Village warranted it would obtain FHA, VA and HUD approvals of the subdivision. To insure this warranty, Royal Village executed a note and mortgage on the remaining lots to Montana Williams in the sum of $748,663.04 to insure Montana Williams that the improvements would be made on the lots being purchased by them.

Neither party performed the contract as written. The payments to be made, the warranty deeds to be delivered and the escrow agent to become involved were never made or designated for the reason that of the $266,053.30 payment due at the time of closing, only $41,823.52 (being the full proceeds from the sale of the five lots set forth in Exhibit A to the contract) was paid. Nevertheless, upon receipt of the money, Royal Village released all five Exhibit A lots by delivery of deeds and mortgage releases. Following execution of the purchase contract, Royal Village also released Exhibit B lots sold to third party purchasers by delivering deeds and bank releases directly from Royal Village to the third party purchasers.

Overall, Montana Williams sold 12 of the 137 lots to third party purchasers for cash. Of the remaining lots, Montana Williams sold 120 on contracts for deed to third party purchasers. For payments received under these contracts, Royal Village released three lots by delivery of warranty deeds and releases of mortgage.

The sales by Montana Williams to third party purchasers generated $238,378 in cash. All was paid to Royal Village even though Montana Williams was entitled to keep a portion as commissions under paragraph 2(E) of the contract for sale.

-4-

By taking into account credits for title insurance, closing fees and some real estate commissions paid by Montana Williams, a total of $250,362.24 has been paid by Montana Williams under the contract.

The parties developed differences on how to salvage the operations when it became apparent Montana Williams could not pay the December installment. In February 1979, Montana Williams requested Royal Village to release as many lots as paid for by the $238,378.31 so as to free those lots for further marketing. Considering the 12 lots already released, Montana Williams asserted it was entitled to at least 31 lots. Royal Village refused the demand and then served Montana Williams with two 15 day notices of default as provided for under the contract. The notices gave Montana Williams a total of 30 days to bring all payments current or forfeit all its contractual rights.

As a result, Montana Williams filed this cause for a declaration of its rights under the contracts on March 22, 1979. After a show cause hearing on April 17 and 18, 1979, the District Court issued findings of fact and conclusions of law on May 4, 1979. The court determined that Montana Williams had forfeited all its contractual rights by failing to make timely payments. The District Court's May 7, 1979 judgment cancelled all agreements between the parties and cancelled the note and mortgage given to secure Royal Village's express warranty. This appeal followed.

The following issues are set forth for our review:

(1) Whether the District Court erred in ruling that the appellant is not entitled to have any additional lots deeded to it?

(2) Whether the District Court erred in not declaring the respondent legally bound by the contracts entered into between appellant and third party purchasers?

-5-

(3)  Whether the District Court erred in cancelling the note and mortgage?

(4)  Whether the District Court erred in cancelling the real estate exclusive agency agreement?

(5)  Whether the District Court erred by granting respondent's motion to add additional parties-plaintiff to this action?

(6)  Whether the appellant is entitled to its attorney fees pursuant to paragraph 8 of the contract?

Appellants' primary contention on this appeal is that they are entitled to the release of additional exhibit B lots under the release provision of the real estate sales contract, on a waiver theory.  It is asserted that respondents waived appellants' admitted default in making the payments due under the terms of the contract, by accepting sums subsequent to the closing of the contract and by releasing deeds to exhibit B lots which by the wording of the contract were not to be released until payment of the full closing amount. Appellants also submit that the sanctions provided for under the forfeiture provisions of the contract were not utilized with the celerity that is required under Montana law.

Although it is true that Montana case law supports the proposition that a vendor's option to declare or assert a forefeiture for default in payment must be exercised promptly, Suburban Homes Co. v. North (1914), 50 Mont. 108, 118, 145 P. 2, 5; Hansen v. Transamerica Ins. Co. (1978), ____ Mont. ____, 573 P.2d 663, 666, 35 St.Rep. 55, 58-59, it is also true that such a waiver does not compel the vendor to keep the contract open indefinitely.  On the contrary, the essence of the waiver is merely that there cannot be a forfeiture without the giving of a preliminary warning which in turn implies notice of an intent to forfeit if payment is not made

-6-

within reasonable time. The vendor waives such a right only for the time being and can only terminate the contract after he has given the purchaser suitable notice and a reasonable time to pay. Suburban Homes, 50 Mont. at 118, 145 P. at 5.

In the present case, assuming arguendo there did exist a suspension of the right of forfeiture due to respondents' indulgence, it was only temporary and was restored by the respondents giving to the purchaser the 30 day grace period and subsequent 15 day notices required by paragraph 5 of the contract. As a result, respondents are precluded from asserting rights under the contract based on waiver.

The forfeiture provision of the contract states in pertinent part:

> ". . . The Purchaser hereby agrees that in the event that the said forfeiture is exercised and it fails to perform as herein agreed,. . . that all of its rights, title, interest and equity in said premises are forever forfeited. Provided, however, that as to any lots previously released and conveyed to the Purchaser as herein provided, there shall be no forfeiture and purchaser shall be entitled to retain such lots."

No contest is presented as to those lots "previously released and conveyed to the purchaser." However, appellants' assertion of entitlement to additional lots depends on a dead instrument. Light v. Zeiter (1950), 124 Mont. 67, 71, 219 P.2d 295, 297. As was their choice pursuant to the purchasers' default, respondents chose to serve the required notices that terminated the contract. The contract being at an end, the appellants cannot now sue upon it as though it was still in force.

Appellants assert as grounds for their second issue of review that it is evident from both the contract of sale and the manner in which appellants and respondents performed it that the contracts entered into between appellants and individual third party purchasers constitute a joint venture

-7-

between appellants and respondents making them jointly bound. This issue was not presented to the District Court and as such cannot be raised for the first time on appeal. Northern Plains v. Board of Natural Resources (1979), 594 P.2d 297, 309, 36 St.Rep. 666, 680; Spencer v. Robertson (1968), 151 Mont. 507, 511, 445 P.2d 48, 50-51.

Appellants' next two issues concern the real estate exclusive agency agreement and respondents' note and mortgage given as security for that warranty. Appellants contend these instruments constitute covenants severable from the contract for sale and as such survive the termination of the contract.

The District Court's findings of fact nos. 12 and 13 respectively find these instruments executed as part of the same transaction. These findings will not be disturbed on appeal unless respondents present substantial evidence to refute these findings. Knight and Co. v. Manaras (1979), ____ Mont. ___, 603 P.2d 675, 676, 36 St.Rep. 2148, 2150A. Respondents have failed to refute satisfactorily these findings. After examining the record this Court finds that the evidence indeed leads to the factual conclusion that the execution of these documents was achieved pursuant to but one transaction. As a result, we find this contention without merit.

Appellants' next allegation of error concerns findings of fact no. 2 which reads in pertinent part:

"That plaintiff corporation had not filed its annual report for the year 1978 at the time this action was commenced, and Lillian E. Williams, Joseph F. Williams, and David L. Farrand should be named as additional parties plaintiff,. . ."

The District Court denied appellants' post-trial motion to amend its findings on this point. During the hearing on the post-trial motions, appellant correctly informed the Court that section 15-811, R.C.M. 1947, the statute used to impose personal liability upon the directors of a corporation for all

-8-

debts and judgments of the corporation where it failed to file an annual report, had been repealed by section 143, Chap. 300, Laws of 1967. Section 15-22-125, R.C.M. 1947, now section 35-1-1103, MCA, is essentially a replacement statute which changes the nature of the sanction from personal liability to imposition of misdemeanor criminal sanctions upon the corporation.

The evidence is substantial to allow Lillian E. Williams and Double Diamond Properties to be named as additional parties plaintiff. The real estate exclusive agency agreement was signed on behalf of Double Diamond Properties by Lillian E. Williams, a duly licensed Montana real estate broker, as was the contract for sale of real property.

However, the addition of Joseph F. Williams and David L. Farrand does not seem to be substantiated by the record. As a result they should be dismissed as parties to this action.

Appellants' last issue requesting attorney fees pursuant to paragraph 8 of the contract, is also dismissed since they were not the successful party in this litigation.

The decision of the District Court is affirmed as modified in accordance with this opinion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

-9-