No. 80-173

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

IN RE THE MARRIAGE OF

KENNETH LIPPERT,

Petitioner and Appellant,

-vs-

JEAN S. LIPPERT,

Respondent and Respondent.

Appeal from:  District Court of the Thirteenth Judicial District,
In and for the County of Big Horn, The Honorable
Diane G. Barz, Judge presiding.

Counsel of Record:

For Appellant:

Overfelt Law Firm, Billings, Montana
John S. Forsythe, Forsyth, Montana

For Respondent:

Anderson, Edwards & Molloy, Billings, Montana

Submitted on Briefs:  February 19, 1981

Decided:  April 30, 1981

Filed: APR 3 0 1981

Thomas J. Kearney
Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

This is an appeal from a final judgment entered in the District Court of the Thirteenth Judicial District, Big Horn County, March 3, 1980. No issue is taken to the granting of the decree of dissolution or to respondent's custody of the two children. Appellant challenges the disposition of the marital estate.

The parties were married June 7, 1968. Appellant filed his petition seeking dissolution of the marriage in April of 1978. Trial without jury was had June 12, 1979. Discovery was reopened upon respondent's motion on July 9, 1979, and closed December 6, 1979. Decree of dissolution was granted on August 28, 1979.

From the beginning of the marriage until 1977, appellant was employed by Lippert Brick Contracting Co., Inc., Belleville, Illinois. The respondent, a registered nurse before the marriage, worked part-time outside the home and was principally responsible for supervision of the household and the children, Jennifer Lynn, age 11, and Nicole Lee, age 9.

The major assets acquired during the marriage were the family home, with a net equity of $90,000, and stock options in Lippert Brick worth $36,000. The house was partially purchased with $34,000 received by the appellant in 1969 and 1971 from a family trust, and $31,000 of the stock options resulted from gifts made by appellant's parents during the marriage.

The parties decided to leave Belleville, Illinois, in 1977. Appellant moved to Rosebud County, Montana, in April of 1977 while the respondent remained in Illinois to prepare their home for sale and to allow the children to finish the

remainder of the school year. The stock options were sold in May 1977 and the house in December 1977.

The planned construction business was not started immediately. Initially, appellant was hired by the Northern Cheyenne Tribe to supervise the construction of three buildings. The job lasted one year for which appellant was paid $30,000. The business venture was started early in 1978. Appellant purchased construction equipment with part of the money received from the sale of the stock options and the house.

Following completion of the buildings in April of 1978, appellant began working for Northern Cheyenne Erectors Incorporated (NCE), a private construction firm. He rented some of his equipment to NCE and loaned money to the struggling corporation. Although he earned $11,747.72 in wages from NCE and received $13,399 in rental income, the rental business and the collateral transactions with NCE proved to be a financial disaster. At trial appellant claimed he lost all of the money invested in the rental business. In November 1978, appellant left NCE. He is now an instructor at Dull Knife Memorial College, earning $17,000 per year.

Throughout this period the respondent has lived in Belleville, Illinois, where she is now employed earning approximately $12,000 per year.

Appellant has challenged the District Court's findings regarding the (1) net worth of the marital estate, (2) liquidated stock options, (3) family trust distributions, and (4) opportunity for future acquisition of capital assets and income.

We find the challenge to the finding of net worth of the parties to be determinative and, for reasons contained in the remainder of this opinion, feel we need not discuss the other issues raised by the appellant.

Appellant contends the District Court failed to determine the net worth of the parties at or near the time of the trial and that failure to do so was reversible error. After consideration of the unique circumstances presented by this case, we agree.

The District Court found the following:

"XVI. From April of 1977 until trial of this matter, petitioner took, from the marital estate of the parties to Montana, the following sums of money with the express purpose, as petitioner advised respondent to invest in his business:

"1. $26,000 was taken by petitioner in approximately May of 1977; this sum was taken from the proceeds of the consideration to forego his stock option with respect to Lippert Brick, that consideration being a total of $36,000.00

"2. $10,000.00 in November of 1977; this sum was obtained by putting a second mortgage on the family home;

"3. $60,000.00 in December of 1977, said sum being obtained from the proceeds of the sale of the family home.

"XVII. The Court finds that petitioner took the sum of $96,000.00 from the marital estate and brought it to Montana for the purpose, as he advised respondent, of investing in business.

". . .

"XX. The following amounts of money were left with respondent in Illinois, while petitioner was taking $96,000.00 of the marital estate to Montana to invest in business, as he told respondent:

"1. $10,000.00 in May of 1977, that being the balance of the $36,000.00 paid by Lippert Brick in consideration for relinquishing the stock option purchase right in petitioner with respect to Lippert Brick.

"2. $10,000.00 in December of 1977, said sum being the balance of the proceeds left after all expenses of sale of the family home, to include mortgages and other notes, and petitioner's taking of $60,000.00 of those proceeds to Montana to, as he told respondent, invest in business.

". . .

"XXXV. 3. That respondent shall have, in the form of a judgment against petitioner, the sum of $48,000.00, said sum representing one-half of the $96,000.00 of marital assets that petitioner has dissipated in Montana and is unable to account for, in any way, such

-4-

> lack of ability to account for said $96,000.00 the
> Court finds to be incredible and the Court does not
> believe the petitioner's statement that he cannot ac-
> count for said money and the Court is not impressed or
> persuaded by petitioner's statement that the said
> $96,000.00 has simply been poured into bad business
> ventures, which statements petitioner is not able to
> support by anything that resembles clear or convincing
> evidence."

A proper disposition of marital property in a dissolution proceeding requires a finding of the net worth of the parties at or near the time of the dissolution. Hamilton v. Hamilton (1980), ___Mont.___, 607 P.2d 102, 37 St.Rep. 247; Vivian v. Vivian (1978), ___Mont.___, 583 P.2d 1072, 35 St.Rep. 1359; Kramer v. Kramer (1978), 177 Mont. 61, 580 P.2d 439; Downs v. Downs (1976), 170 Mont. 150, 551 P.2d 1025. The basic reason for the rule is obvious; however, it is equally apparent that application of the rule is dependent upon the kinds of marital assets under consideration. The time for proper valuation cannot be tied to any single event in the dissolution process. The filing of a petition, trial of the matter, or even the granting of the decree of dissolution do not control the proper point of evaluation by the District Court.

The exercise of discretion by the District Court is necessary when determining the worth of marital assets which fluctuate in value. For example, the value of a particular common stock may change drastically during the course of a dissolution while the value of the family home or other personal property remains stable. Under such circumstances selection of a single evaluation point for determining net worth of the parties could create an inequitable disposition.

Turning to the case at bar, the record before us unequivocally demonstrates the District Court considered appellant's departure from Illinois in April 1977 as the time for evaluation

-5-

of the marital estate. The implicit reasoning used by the District Court was manifestly based upon a presumption that appellant was untruthful at trial when he claimed the business was a disaster, and he no longer had the money he brought to Montana. Although no contrary evidence was proffered by the respondent or discovered during the six-month period following trial, the District Court found the $96,000 was in the marital estate and awarded the respondent a judgment against the appellant for $48,000. This was done despite the fact that the evidence showed the property had been lost in bad investments and simply did not exist. The District Court abused its discretion for three reasons.

First, the District Court lacked sufficient evidence to support its finding. While the District Court was in the best position to judge the candor or honesty of the appellant's testimony, the findings and conclusions must still be supported by evidence and not merely lack of witness credibility. If appellant has committed fraud upon the court, the case may be justifiably reopened. Pilati v. Pilati (1979), ___Mont.___, 592 P.2d 1374, 36 St.Rep. 619.

Second, the District Court exceeded its authority under section 40-4-202, MCA, by awarding the respondent property in excess of the proven net worth of the estate. The statute mandates "[t]he court shall also consider the contribution or dissipation of value of the respective estates . . ."; however, the District Court's power does not extend beyond the existent estate. In other words the District Court may never award more than 100 percent of the marital estate.

Third, the award ignores fundamental legal principles of marital status; spouses possess mutual powers, obligations and interests which endure until lawfully modified or

-6-

terminated. One of those powers is the power to freely contract with others regarding marital property. Section 40-2-301, MCA. Appellant may have used poor judgment in his business transactions regarding the equity of the family home and the stock options; however, he lawfully possessed that power. The record does not indicate the respondent attempted to modify the appellant's right to control and dispose of the property as he did or that she claimed breach of fiduciary obligation by the appellant.

In summary, we find the District Court abused its discretion in determining the net worth of the parties. Further, the issues raised by appellant regarding the stock options and family trust distributions are hypothetical and thus moot unless new evidence can be produced. The order of the District Court is vacated, and this cause remanded for further proceedings consistent with this opinion.

_____
Justice

We concur:

_____

_____

_____
Justices

Mr. Justice John C. Sheehy dissenting:

The judgment entered by the District Court should be affirmed. The majority fault the District Court for not filing the net worth of the marital property of the parties on dissolution of the marriage, but give no effect to the impossibility for such evaluation through the lack of assistance and cooperation of the husband. The court found, as the majority opinion indicates, that the husband took $96,000 of the marital assets of the estate for the purported purpose of investing the same. Some $60,000 of those assets were obtained as late as December 1977. The action for dissolution of marriage was commenced on April 10, 1978. On July 12, 1978, in the husband's answers to the wife's first interrogatories, while the litigation was in progress, he reported total assets of $118,275, total liabilities of $61,075, for a net worth at that time of $57,200. On May 30, 1979, the husband filed his "current answers" to the first set of interrogatories in which he reported total assets of $9,410, liabilities of $3,475, for a net worth of $5,935.

In none of the husband's subsequent answers to interrogatories, testimony or documentation, does he demonstrate with any degree of adequacy what happened to the assets of the marital estate which he took with him. He contends that he "invested" the monies, and sustained some "business losses." On that basis, the court found as follows:

> "XXIII. Petitioner now claims that he has no
> business, that he has lost all of the $96,000
> that he brought to Montana, and claims a net
> worth of $5,935.

> "XXIV. The court finds the testimony of
> petitioner incredible and finds that he
> has dissipated the value of the marital
> estate by the $96,000 he brought to Montana
> and cannot now account for."

-8-

The court then went on to find that the petitioner's opportunity for future acquisition of assets and capital is excellent considering his job skills and experience and on that basis rendered the judgment against the husband in favor of the wife.

There is no reason here to depart from the general rule of appellate practice that in cases tried to the court without a jury, the District Court is in the best position to see the comportment of the witnesses, and to judge of their candor and credibility. Knight and Co. v. Manaras (1979), ___ Mont. ___, 603 P.2d 675, 36 St.Rep. 2148; Jensen v. Jensen (1979), ___ Mont. ___, 597 P.2d 733, 36 St.Rep. 1259; Marcoff v. Buck (1978), ___ Mont. ___, 587 P.2d 1305, 35 St.Rep. 1953. Where the findings of the District Court depend upon the credibility of the witnesses, and the weight to be given their testimony, the District Court's determination of those matters will be given weight in reviewing the sufficiency of the evidence and we will ordinarily presume that findings and judgment entered by the District Court are correct. Lumby v. Doetch (1979), ___ Mont. ___, 600 P.2d 200, 36 St.Rep. 1684.

This case should be controlled by Downs v. Downs (1976), 170 Mont. 150, 551 P.2d 1025, appeal after remand, 592 P.2d 938 (1979). The situation in Downs was the same as that faced by the District Court in this case. The husband was evasive, he had given incomplete discovery, and the trial court had no way to appraise the value of the marital property. The trial court had been confronted with a problem of evaluating the marital property in the face of the lack of credibility of the witness. There we ordered a new trial because of the unreliability of the record. When the case returned to us on remand, it was found that the recalcitrance of the husband

-9-

had continued. The judgment of the District Court on the second trial was affirmed without further ado.

In the case at bar, it is completely within the power of the husband to demonstrate what happened to the marital monies. He has not done so. He has been evasive in discovery and evasive in his testimony. This Court now places a burden upon the wife to set about to prove the falsity of her husband's claimed losses; losses for which he claims to have no records. She should not have that burden. The judgment should be affirmed.

_____
　　　　　　　John C. Shuhey
　　　　　　　　　　Justice